Filed 3/20/13  P. v. Lockett CA2/3

Opinion following order vacating prior opinion

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B231603 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA371797) |
| v. | |
| FLOYD LOCKETT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Drew E. Edwards, Judge.  Affirmed.

David L. Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Floyd Lockett, appeals the judgment entered following his conviction for selling cocaine, with prior prison term, prior serious felony conviction, and prior drug conviction enhancements (Health & Saf. Code, §§ 11352, 11370.1; Pen. Code, §§ 667.5, 667, subd. (b)-(i)).[1] He was sentenced to state prison for a term of 17 years.

The judgment is affirmed.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

On May 25, 2010, Los Angeles Police Officer Edgar Ramos was working on a drug trafficking sting operation at Sixth Street and San Pedro, an area known for narcotics transactions. He was monitoring Officer Ben McCauley, who was posing as a customer.

Defendant Lockett and a man named Baptiste were standing on the street. An unidentified man approached them and spoke with Lockett. As they talked, Baptiste kept looking up and down the street. When a marked police car stopped at a nearby traffic light, Baptiste said something like "hold on" and the three men "just froze there."

After the patrol car drove off, Baptiste "signaled with his hand [and] motioned him sort of to go ahead with the transaction," Lockett then "remove[d] what appeared to be a clear plastic bindle containing off-white solids resembling rock cocaine from his buttocks area." Ramos testified this was a common place for dealers to hide their drugs due to the unlikelihood of being strip-searched in the field. Lockett took something from the bindle and gave it to the unidentified man

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

in exchange for some cash. Lockett returned the clear plastic bindle to his buttocks area and the unidentified man walked away.

Officer McCauley then approached Lockett and said, " 'Let me get a dub' referring to $20 worth of drugs." McCauley testified he saw Lockett "reach into his [buttocks] area and remove a clear plastic bindle which contained several off-white solids resembling rock cocaine. From the bindle he removed some of the items and handed them to me as I simultaneously handed him my prerecorded $20 bill." The substances Lockett gave McCauley were later determined to contain .41 grams of cocaine base. McCauley walked away and gave the signal indicating he had made a purchase.

Less than a minute later, several uniformed officers drove up. When Lockett saw them approaching, he put what looked like paper currency into his mouth. Both Lockett and Baptiste were taken into custody. By the time Lockett was arrested, his mouth was empty. Lockett had the following cash in his possession: four $100 bills, six $20 bills, three $10 bills, two $5 bills and eighteen $1 bills, totaling $578. This cash was distributed between Lockett's right front pocket, right rear pocket, and left rear pocket.

Neither the buy money nor the plastic bindle was recovered. There was testimony that, because many drug dealers in this area were familiar with undercover operations involving marked money, it was common for them to swallow both drugs and money as a way of destroying evidence.

2. *Defense evidence.*

Brenda Sanford, a manager for Lamp Community, a nonprofit organization which provides transitional housing for homeless people, testified she had hired Lockett as a Laundromat attendant in January 2010. Lockett usually worked for two hours five days a week, although sometimes he put in more hours. Sanford issued Lockett's paychecks, but she did not recall exactly how much he was paid.

Lockett had a burn mark on one of his forearms, which was shown to the jury.

3

**CONTENTIONS**

1. The trial court improperly denied Lockett's motion for a continuance.

2. The trial court erred by excluding certain proposed testimony.

3. This court should determine if *Pitchess* discovery was properly made.

**DISCUSSION**

1. *Trial court properly refused continuance request.*

Lockett contends the trial court erred by denying his midtrial request for a continuance in order to obtain certain physical evidence. This claim is meritless.

a. *Legal principles.*

" ' "The granting or denial of a motion for continuance in the midst of a trial traditionally rests within the sound discretion of the trial judge who must consider not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion. . . ." ' [Citation.]" (*People v. Fudge* (1994) 7 Cal.4th 1075, 1105-1106.) "A continuance will be granted for good cause (§ 1050, subd. (e)), and the trial court has broad discretion to grant or deny the request. [Citations.] In determining whether a denial was so arbitrary as to deny due process, the appellate court looks to the circumstances of each case and to the reasons presented for the request. [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 1012-1013, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

On appeal, the trial court's ruling is reviewed for abuse of discretion. (*People v. Mickey* (1991) 54 Cal.3d 612, 660; see, e.g., *People v. Howard* (1992) 1 Cal.4th 1132, 1171-1172 [defendant must show witness is material and likely to give non-cumulative testimony beneficial to the defense].) An abuse of discretion may constitute harmless error. (See *People v. Hawkins* (1995) 10 Cal.4th 920, 945, disapproved on another ground in *People v. Lasko* (2000) 23 Cal.4th 101, 109-110 ["Nor is defendant able to demonstrate that, had the one-week

4

continuance been granted, there is a reasonable probability that the outcome of the trial would have been more favorable to him."].)

        b. *Background*.

On the second day of trial, as the parties were about to discuss jury instructions in anticipation of turning the case over to the jury later that day, defense counsel asked for a continuance in order to obtain the pants and belt Lockett had been wearing when he was arrested. This clothing was in the possession of the Sheriff's office, whose representative was not on duty in the afternoons and thus needed some accommodation from the trial court.

Defense counsel argued the evidence was relevant because the officers testified Lockett had retrieved the cocaine from his buttocks area: "[N]obody could really testify to what kind of pants he was wearing. I believe there was some testimony about not baggy, not really tight fitting. And I believe that the type of pants, no elastic waist, just regular pants and a belt, a normal size belt . . . would go towards an unlikelihood that a person wearing those pants was able to access [his buttocks area]." The prosecutor replied, "Well, I don't know how counsel wishes to make that connection. We don't know how he was wearing those pants. We don't know how he was wearing that belt. I mean, unless [Lockett's] going to get up and testify as to how he was wearing those pants and how he was wearing that belt, then counsel is just making a very far stretched assumption [*sic*] to the jury."

After noting defense counsel had already indicated Lockett was unlikely to testify, the trial court refused to delay the trial to accommodate the acquisition of this evidence: "[W]hile the items may be relevant, this is a matter that should have been taken up long ago. If counsel was aware of the fact that the pants could be an issue, that item should have been taken care of and you should have got that item here in court prior to the day we're scheduled to actually do closing arguments."

5

c. *Discussion.*

We conclude that, because the defense knew for some time, at least from when the preliminary hearing was held six months earlier, that the officers claimed to have seen Lockett retrieve the drugs from his "buttocks area," the trial court did not abuse its discretion by denying a continuance. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 1037 [good cause for continuance requires diligent preparation for trial].)

Moreover, it appears Lockett would not have derived any substantial benefit from this evidence. (See *People v. Doolin, supra,* 45 Cal.4th at p. 451 [motion for continuance properly denied where "[r]etesting DNA would not have been beneficial to defendant . . . in light of the extensive evidence linking him to each crime"]; *People v. Gatlin* (1989) 209 Cal.App.3d 31, 40 [speculative nature of proposed new evidence properly justified denial of continuance].) As the Attorney General points out, "[A]ssuming appellant were able to establish he was wearing belt and pants at the time of the crime, there was to be no evidence as to *how* he was wearing them. Thus, appellant was not planning on testifying that he had the belt notched at the tightest position or that it somehow prevented him from reaching into his buttocks area, or that it fit tightly, or even snugly. As the prosecutor also pointed out, there is nothing unusual about people wearing belts and pants loosely. Accordingly, the proffered 'evidence' was of no consequence. . . ."

Hence, the trial court did not abuse its discretion by refusing to continue the trial to accommodate Lockett's attempt to introduce the pants and belt into evidence.

2. *Excluded testimony.*

Lockett contends the trial court erred by excluding certain proposed testimony from Brenda Sanford, the Lamp Community manager. This claim is meritless.

a. *Background.*

Sanford testified her organization had employed Lockett to work in the Laundromat. Defense counsel wanted Sanford to also testify "that [Lockett] was in the process of getting ready to do independent living to move into his own apartment." This was relevant, defense counsel said, because Lockett had been arrested with $578 on him, which suggested he was selling drugs, whereas Sanford's testimony about Lockett moving to an independent living situation would offer an innocent explanation for all that cash: "[T]he offer of proof is that this is obviously a low income area. This is probably presumably a low income job and why would he have that amount of money with him at one time, why would he have it on him saving it, whatever it might be, but he had that amount of money on him. And she can testify that he was in the process of being placed in – I'm using the word 'place' because of the assistance that's given to be in an independent living." The trial court rejected this argument: "In my view that is not relevant. The only thing that is relevant is . . . that the money [appellant] had in his possession could have come from his job. She can certainly testify [appellant] had a job where he was getting paid. The fact he was going into independent living is not relevant to any issue in this case."

b. *Discussion.*

Lockett asserts the trial court should have allowed this testimony: "It is one thing to prove that a low-income resident of this neighborhood had a menial job. It is entirely another to show that he was on his way out of the transitional home to independent living. The obvious inference is that he had been saving his meager salary to do so." We disagree.

7

As the Attorney General points out, there was apparently not going to be any evidence tying the cash Lockett had in his pockets to any specific change in his living situation because "appellant made no offer as to what 'independent living' meant in that context, i.e., whether it meant appellant was to obtain his own apartment for which he paid rent, whether he was moving into some sort of 'group home' with others who had been involved with LAMP, or if he would simply be leaving to fend for himself after a given amount of time had passed. Moreover, assuming this meant that appellant was going to be renting an apartment at some point, there was no offer of proof as to what the time table was for appellant renting his own apartment or anything that would connect such proffered testimony with the cash appellant had on him at the time of the arrest. At best, the inference appellant sought to have the jury draw was speculative, and thus irrelevant." " '[E]vidence which produces only *speculative* inferences is *irrelevant* evidence.' " (*People v. Babbitt* (1988) 45 Cal.3d 660, 682; see, e.g., *People v. Clark* (2011) 52 Cal.4th 856, 924 [error to admit testimony from defendant's domestic partner that they had not been sexually active during the two weeks prior to a sexual assault/murder: "To infer from such testimony that at the time of the crimes defendant was sexually frustrated and thus motivated to rape [the victim] was highly speculative and thus irrelevant."].)

The trial court did not err by excluding this evidence.

3. *Review of in camera <u>Pitchess</u> hearing.*

Lockett requests review of the trial court's ruling on his motion seeking discovery under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531. Review of the in camera hearing by this court reveals no abuse of the trial court's discretion. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1232.)

8

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

ALDRICH, J.