[No. S069354. June 2, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS LASKO, JR., Defendant and Appellant.

COUNSEL

Jonathan D. Soglin, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver, Bruce Ortega and Amy Haddix, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—Under California law, murder is the unlawful killing of a human being or a fetus, with malice aforethought. Malice is *express* when the killer harbors a deliberate intent to unlawfully take away a human life. Malice is *implied* when the killer lacks an intent to kill but acts with conscious disregard for life, knowing such conduct endangers the life of another.

When a killer *intentionally* but unlawfully kills in a sudden quarrel or heat of passion, the killer lacks malice and is guilty only of voluntary manslaughter. We hold here that this is also true of a killer who, acting with conscious disregard for life and knowing that the conduct endangers the life of another, *unintentionally* but unlawfully kills in a sudden quarrel or heat of passion.

I

Michael Medina and the victim, Don Fitzpatrick, owned a newspaper distribution business. Defendant Louis Lasko, Jr., one of their employees, lived in Fitzpatrick's home in San Jose. Fitzpatrick paid the employees in cash and customarily carried large sums of cash on his person. On September 15, 1994, Medina gave Fitzpatrick $2,820, and an additional $1,200 on September 21, 1994.

On the afternoon of September 27, 1994, five teenage boys—Michael Clark, Art Flores, David Gonzales, Nathan Gonzales, and Jason Reyes—were playing next door to Fitzpatrick's house when they heard someone moaning or screaming inside the house. The boys grabbed makeshift weapons (a tire iron, a bottle, a pool cue, and a board) and went to the door of the house. David Gonzales, the oldest boy and a neighbor of Fitzpatrick's, kicked the door and asked for Fitzpatrick. Defendant yelled through the door that Fitzpatrick was not home. Hearing moaning, Gonzales told defendant to

leave Fitzpatrick alone. Defendant repeated that Fitzpatrick was not home and said he was killing a cat. Gonzales accused defendant of lying and told defendant that Gonzales's mother (who lived next door to Fitzpatrick) was calling the police.

When defendant opened the door briefly, Gonzales and Clark saw blood on the carpet behind defendant, and Reyes saw blood on defendant's shirt. Defendant closed the door. When he opened it again, he had a wad of money in his hand and he invited Gonzales in. Gonzales peered briefly into the house, which was very dark, and saw nothing.

When defendant could not get past Gonzales at the front door, he ran into the backyard and tried to climb a fence, but he stopped when Reyes and Flores started hitting him with a board and a pool cue. The boys allowed defendant to get some water from a nearby faucet, and Reyes saw him surreptitiously hide something on a shelf next to the faucet. Defendant remained in the yard, surrounded by the boys, until San Jose police officers arrived and arrested him. The officers found $1,791 in cash on the shelf.

Inside the house, the officers saw Fitzpatrick lying on the bathroom floor. His face was covered with blood, and he was unresponsive to questions. (He died 30 minutes later in a San Jose hospital.) A baseball bat was in the kitchen, partly covered by a canvas bag, and water was on the kitchen floor. Inside a trash can on a stairway was Fitzpatrick's bloodstained wallet, which contained no money. The wallet was hidden beneath crumpled papers that were wet with water and stained with blood.

Dr. Angelo Ozoa, Chief Medical Examiner for Santa Clara County, examined Fitzpatrick's body. He testified that there were scalded areas on Fitzpatrick's face and the front of his body, and that he died from multiple skull fractures caused by one or several blows from a blunt object.

Defendant testified in his own defense. He said that a week before the killing, Fitzpatrick had accused him of stealing his watch and fired him, but Fitzpatrick permitted him to remain in the house until the end of the year because Fitzpatrick owed him $300. Defendant claimed that on the afternoon of the killing, he was heating a pan of water on the stove when he and Fitzpatrick got into an argument about the money Fitzpatrick owed defendant. When Fitzpatrick hit defendant in the side with a baseball bat, defendant grabbed the pan of water he was heating and threw it at Fitzpatrick, scalding him. The hot water also scalded defendant's arm. Fitzpatrick again hit defendant with the bat, which defendant then took and used to hit Fitzpatrick in the head. Defendant did not intend to kill Fitzpatrick; he was only trying

to protect himself. After Fitzpatrick collapsed on the floor, defendant dragged him to the bathroom. He picked up the telephone to call for help, but there was no dial tone. When he heard kicking on the front door, he went outside, where the boys surrounded him.

Defendant denied telling Gonzales he was killing a cat; what he said was that his cat had jumped in the window while carrying a dead mouse. He also denied telling Gonzales that Fitzpatrick was not home, denied trying to escape by climbing the back fence, denied taking money from Fitzpatrick and placing it on the shelf next to the faucet outside, and denied putting Fitzpatrick's wallet in the trash can on the stairway.

Photographs taken at the time of defendant's arrest showed a cut and bruises on his back, a bruise on his right abdomen, two bruises on his right arm, and a scrape or burn on his right forearm.

In rebuttal, Paul Von Tersh who, like defendant, had been staying at Fitzpatrick's house, testified that defendant had threatened to kill Fitzpatrick about a month and a half before Fitzpatrick's death. A neighbor, Daniel Alarcon, testified that on several occasions before the killing defendant had expressed his hatred of Fitzpatrick, and one of Fitzpatrick's friends testified that twice in the month before Fitzpatrick's death he had heard defendant say he was going to "mess [Fitzpatrick] up." Two witnesses confirmed that Fitzpatrick's telephone was working on the day of the killing.

The trial court instructed the jury on the charged crime of murder. It also instructed the jury on the lesser included offense of voluntary manslaughter, both on the theory that the killing occurred intentionally during a sudden quarrel or in the heat of passion and on the theory that the killing occurred in an honest but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury. The court also instructed the jury on the lesser included offense of involuntary manslaughter. The jury convicted defendant of second degree murder.

On appeal, defendant argued the trial court had erroneously instructed the jury that intent to kill was an essential element of the lesser included offense of voluntary manslaughter. This error, he contended, required the jury to convict him of murder if it found that he had killed Fitzpatrick in a sudden quarrel or heat of passion but without the intent to kill. The Court of Appeal noted that the rule that intent to kill is a necessary element of voluntary manslaughter had become " 'deeply seated in the case law without thoughtful examination,' " as a result of " 'the offhand misreading of *People v. Freel* (1874) 48 Cal. 436, which only holds, correctly, that even if there were an

intent to kill the offense could be manslaughter under the heat of passion doctrine.' " Nevertheless, the Court of Appeal concluded, it lacked the power to redefine the elements of voluntary manslaughter, because it was bound by decisions of this court that voluntary manslaughter requires an intent to kill. (See, e.g., *People v. Hawkins* (1995) 10 Cal.4th 920, 958-959 [42 Cal.Rptr.2d 636, 897 P.2d 574].)

## II

As relevant here, the trial court gave the jury the standard instruction on the elements of voluntary manslaughter (CALJIC No. 8.40): "1. A human being was killed, [¶] 2. The killing was unlawful, and [¶] 3. *The killing was done with the intent to kill.*" (Italics added.)[1] Defendant argues that the instruction was improper because intent to kill is not a necessary element of voluntary manslaughter. We agree.

We begin our analysis by exploring the differences between murder and the lesser offense of manslaughter.

Murder is the unlawful killing of a human being with malice aforethought. (Pen. Code, § 187, subd. (a).)[2] Malice may be either express or implied. It is express when the defendant manifests "a deliberate intention unlawfully to take away the life of a fellow creature." (§ 188.) It is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Ibid.*) We have noted in the past that this definition of implied malice "has never proved of much assistance in defining the concept in concrete terms" (*People v. Dellinger* (1989) 49 Cal.3d 1212, 1217 [264 Cal.Rptr. 841, 783 P.2d 200]), and that juries instead should be instructed that malice is implied "when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life" (*id.* at p. 1215). For convenience, we shall refer to this mental state as "conscious disregard for life."

---

[1]The instruction defining voluntary manslaughter stated in full: "Every person who unlawfully kills another human being without malice aforethought but with an intent to kill, is guilty of voluntary manslaughter in violation of Section 192(a) of the Penal Code. [¶] There is no malice aforethought if the killing occurred upon a sudden quarrel or heat of passion or in the honest but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A human being was killed, [¶] 2. The killing was unlawful, and [¶] 3. The killing was done with the intent to kill. [¶] A killing is unlawful, if it was not justifiable." (Brackets omitted.)

[2]All further statutory references are to the Penal Code.

■ Manslaughter is "the unlawful killing of a human being without malice." (§ 192.) A defendant lacks malice and is guilty of voluntary manslaughter in "limited, explicitly defined circumstances: either when the defendant acts in a 'sudden quarrel or heat of passion' (§ 192, subd. (a)), or when the defendant kills in 'unreasonable self-defense'—the unreasonable but good faith belief in having to act in self-defense (see *In re Christian S.* (1994) 7 Cal.4th 768 [30 Cal.Rptr.2d 33, 872 P.2d 574]; *People v. Flannel* [(1979)] 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1])." (*People v. Barton* (1995) 12 Cal.4th 186, 199 [47 Cal.Rptr.2d 569, 906 P.2d 531].)

■ The form of voluntary manslaughter we address here is when a defendant kills during a sudden quarrel or in the heat of passion. (We consider the other form of voluntary manslaughter—when a defendant kills in unreasonable self-defense—in the companion case of *People v. Blakeley* (2000) 23 Cal.4th 82 [96 Cal.Rptr.2d 451, 999 P.2d 675].)

■ In a recent decision, we discussed what facts will reduce an *intentional* killing from murder to manslaughter, when based on heat of passion: "An intentional, unlawful homicide is 'upon a sudden quarrel or heat of passion' (§ 192(a)), and is thus voluntary manslaughter (*ibid.*), if the killer's reason was actually obscured as the result of a strong passion aroused by a 'provocation' sufficient to cause an ' "ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than judgment." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 163 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) No specific type of provocation is required, and "the passion aroused need not be anger or rage, but can be any ' " '[v]iolent, intense, high-wrought or enthusiastic emotion' " ' [citations] other than revenge [citation]." (*Ibid.*) Thus, a person who *intentionally* kills as a result of provocation, that is, "upon a sudden quarrel or heat of passion," lacks malice and is guilty not of murder but of the lesser offense of voluntary manslaughter.

■ But what offense is committed when a person, acting with a conscious disregard for life, *unintentionally* kills a human being, but the killing occurs during a sudden quarrel or in the heat of passion? Is it murder, voluntary manslaughter, or involuntary manslaughter? The Attorney General insists it is murder. We disagree. The statutory provision defining voluntary manslaughter contains no requirement of intent to kill. Section 192 describes manslaughter as "the unlawful killing of a human being without malice" and states that there are three types of manslaughter. Subdivision (a) of this section defines voluntary manslaughter as occurring "upon a sudden quarrel or heat of passion." Nothing is said about an intent to kill.

Under the Attorney General's approach, one who shoots and kills another in the heat of passion and with the intent to kill is guilty only of voluntary

manslaughter, yet one who shoots and kills another in the heat of passion and with conscious disregard for life but with the intent merely to injure, a less culpable mental state than intent to kill, is guilty of murder. This cannot be, and is not, the law.

We drew a similar comparison in *In re Christian S., supra*, 7 Cal.4th 768. There, we held that a defendant who unintentionally kills in the actual but unreasonable belief in the necessity of self defense ("imperfect self-defense") is not guilty of murder. "A contrary conclusion," we reasoned, "namely, that imperfect self-defense applies only in cases of express, but not implied, malice would lead to a totally anomalous and absurd result, in which a defendant, who unreasonably believes that his life is in imminent danger, would be guilty only *of manslaughter* if he acts *with the intent to kill* his perceived assailant, but would be guilty *of murder* if he does *not* intend to kill, but only to seriously injure, the assailant." (*Id.* at p. 780, fn. 4.)

Also on point here are early decisions of this court establishing that one who kills upon a sudden quarrel or in the heat of passion lacks malice regardless of whether there was an intent to kill. An example is *People v. Freel, supra*, 48 Cal. 436. There the trial court instructed the jury that manslaughter was " 'the unintentional result of a sudden heat of passion, or of an unlawful act committed without due caution or circumspection.' " (*Id.* at p. 437.) We found this instruction erroneous and reversed the defendant's conviction for second degree murder. We explained: "Whether the homicide amounts to murder or to manslaughter merely, *does not depend upon the presence or absence of the intent to kill.* In either case there may be a present intention to kill at the moment of the commission of the act. But when the mortal blow is struck in the heat of passion, excited by a quarrel, sudden, and of sufficient violence to amount to adequate provocation, the law, out of forbearance for the weakness of human nature, will disregard the actual intent and will reduce the offense to manslaughter. In such case, although the intent to kill exists, it is not that deliberate and malicious intent which is an essential element in the crime of murder." (*Ibid.*, italics added.) Similarly, in *People v. Doyell* (1874) 48 Cal. 85, 96, this court said, "the law, in some cases of voluntary manslaughter, disregards the actual intent to kill, when the killing is done in a sudden passion, caused by sufficient provocation." (See also *People v. Elmore* (1914) 167 Cal. 205, 210 [138 P. 989] [quoting extensively from *Freel* and *Doyell* and citing both cases with approval].)

Thus, a killer who acts in a sudden quarrel or heat of passion lacks malice and is therefore not guilty of murder, irrespective of the presence or absence of an intent to kill. Just as an unlawful killing *with* malice is murder regardless of whether there was an intent to kill, an unlawful killing without

malice (because of a sudden quarrel or heat of passion) is voluntary manslaughter, regardless of whether there was an intent to kill. In short, the presence or absence of an intent to kill is not dispositive of whether the crime committed is murder or the lesser offense of voluntary manslaughter.

It is true that some of our decisions appear to hold to the contrary. For instance, in *Drown v. New Amsterdam Casualty Co.* (1917) 175 Cal. 21, 24 [165 P. 5], this court observed in passing that "to constitute voluntary manslaughter there must be an intent to kill . . . ." Thereafter, this court repeated that fleeting observation in a number of cases. (*People v. Hawkins, supra,* 10 Cal.4th 920, 958; *People v. Ray* (1975) 14 Cal.3d 20, 28 [120 Cal.Rptr. 377, 533 P.2d 1017]; *People v. Forbs* (1965) 62 Cal.2d 847, 852 [44 Cal.Rptr. 753, 402 P.2d 825]; *People v. Brubaker* (1959) 53 Cal.2d 37, 44 [346 P.2d 8]; *People v. Gorshen* (1959) 51 Cal.2d 716, 732-733 [336 P.2d 492]; *People v. Bridgehouse* (1956) 47 Cal.2d 406, 413 [303 P.2d 1018]; *People v. Bender* (1945) 27 Cal.2d 164, 181 [163 P.2d 8]; see also *People v. Miller* (1931) 114 Cal.App. 293, 300 [299 P. 742].) In each of these cases, that observation was mere dictum. None of them said that a defendant who kills in a sudden quarrel or heat of passion, with conscious disregard for life but without intent to kill, is guilty of *murder*.[3]

Our conclusion that voluntary manslaughter does not require an intent to kill is consistent with the common law as well as the statutory law in most states. A prominent criminal law treatise explains: "[A]t common law and by statute in most states, since the homicide must be committed under circumstances which would otherwise be murder, defendant may act with the intent to kill or with any mental state which amounts to 'malice'; the malice is negated by the provocation and the offense is mitigated from murder to voluntary manslaughter." (2 Wharton's Criminal Law (15th ed. 1994) § 155, pp. 347-348.) Other criminal law scholars share that view: "It is not necessary that there should be a specific intent to kill to constitute voluntary manslaughter. Where the killing is done with a deadly weapon, if its use is intentional, and if the defendant knew or had reason to know that to use it as he did would endanger the life of [the] deceased or another, and acted recklessly of such safety, an intent to injure him may be inferred. Where one purposely assaults another with a dangerous weapon, in a way naturally to cause death, and death results, the killing is voluntary." (1 Warren on Homicide (1938) Elements of Voluntary Manslaughter, § 85, pp. 418-419.) "Most killings which constitute voluntary manslaughter are of the intent-to-kill sort . . . . But if [the killer] in the [heat of] passion . . . should intend

---

[3]In this case, defendant does not contend that an unintentional killing in the heat of passion is involuntary rather than voluntary manslaughter. In the companion case of *People v. Blakeley, supra,* 23 Cal.4th 82, we reject the related claim that an unintentional killing in unreasonable self-defense is involuntary manslaughter.

instead to do his tormentor serious bodily injury short of death, or if he should, without intending to kill him, endanger his life by very reckless (depraved heart) conduct, the resulting death ought equally to be voluntary manslaughter . . . . [T]he great majority of modern statutes . . . take this broad view." (2 LaFave, Substantive Criminal Law (1986) § 7.10, p. 253.)

That view, which we adopt today, has also been embraced by the United States Court of Appeals for the Ninth Circuit. In discussing the federal voluntary manslaughter statute, whose language is identical to California's voluntary manslaughter statute, the court noted: "While most voluntary manslaughter cases involve intent to kill, it is possible that a defendant who killed unintentionally but recklessly with extreme disregard for human life may have acted in the heat of passion with adequate provocation. [Citations.] In such a case, the defendant would be guilty of voluntary manslaughter, not murder." (*U.S. v. Paul* (9th Cir. 1994) 37 F.3d 496, 499, fn. 1; see also *U.S. v. Browner* (5th Cir. 1989) 889 F.2d 549, 553 ["Voluntary manslaughter . . . requires proof . . . of a mental state that *would* constitute malice, but for the fact that the killing was committed in adequately provoked heat of passion or provocation."].)

### III

As we have explained, intent to kill is not a necessary element of the crime of voluntary manslaughter, which is a lesser offense included in the crime of murder. Thus, the trial court here erred when it told the jury that voluntary manslaughter requires a finding that "[t]he killing was done with the intent to kill." The error, however, did not prejudice defendant.

A majority of this court recently held that when a trial court violates state law by failing to properly instruct the jury on a lesser included offense, this test applies: "[I]n a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818, 836 [299 P.2d 243]]. A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred (*Watson, supra,* 46 Cal.2d 818, 836)." (*People v. Breverman, supra,* 19 Cal.4th 142, 178.)

Here, in addition to its erroneous instruction to the jury that voluntary manslaughter requires an intent to kill, the court gave CALJIC No. 8.50,

a standard instruction explaining the difference between murder and manslaughter. This instruction stated in part: "When the act causing the death, though unlawful, is done in the heat of passion or is excited by a sudden quarrel such as it amounts to provocation . . . the offense is manslaughter. In such a case, even if an *intent to kill* exists, *the law is that malice, which* is an essential element of murder, is absent. [¶] To establish that a killing is murder . . . and not manslaughter, the burden is on the People to prove beyond a reasonable doubt each of the elements of murder *and that the act which caused the death was not done in the heat of passion or upon a sudden quarrel* . . . ." (Italics added.) Thus, the jury was told that regardless of whether the killing of Fitzpatrick was intentional or unintentional, defendant could not be convicted of murder unless the prosecution proved that, at the time of the killing, defendant was *not* acting in the heat of passion. Had the jury believed that defendant unintentionally killed Fitzpatrick in the heat of passion, it would have concluded that it could not convict defendant of murder (because he killed in the heat of passion) and could not convict defendant of voluntary manslaughter (because he lacked the intent to kill). The jury most likely would have convicted defendant of involuntary manslaughter, a lesser offense included within the crime of murder, on which the jury was also instructed. Instead, the jury convicted defendant of second degree murder, showing that it did not believe the killing was committed in the heat of passion.

In closing argument, neither the prosecution nor the defense suggested that defendant was guilty of murder if he unintentionally killed Fitzpatrick in a sudden quarrel or the heat of passion. Indeed, the subject of voluntary manslaughter did not figure prominently in either party's argument. Defense counsel devoted much of his argument to rebutting the prosecutor's contention that defendant premeditatedly killed Fitzpatrick in the course of robbery, and that the jury should therefore convict defendant of first degree murder with a robbery-murder special circumstance.

Moreover, the evidence strongly suggested an intent to kill. Defendant hit Fitzpatrick in the head with a baseball bat with extreme force. The blow (or blows) caused extensive and multiple fractures at the base and on the outside of Fitzpatrick's skull. Numerous fragments of bone, the largest of which was about three inches in length, were broken off the top of the skull. There was also evidence that defendant had threatened to kill Fitzpatrick a month and a half before the killing. Furthermore, defendant's actions *after* striking the fatal blow were not those of an unintentional killer: he did not call an ambulance, he tried to obscure evidence of the killing by dragging Fitzpatrick's body to the bathroom and by trying to wipe up the blood on the floor, and he tried to leave the house with $1,800 of Fitzpatrick's money.

Given the strength of the evidence indicating that the killing was not only intentional but premeditated, defendant could have been, but was not, convicted of first degree murder. Instead, the jury found him guilty of second degree murder. Under the circumstances, it is not reasonably probable that a properly instructed jury would have convicted defendant of the lesser offense of voluntary manslaughter. (*People v. Watson, supra*, 46 Cal.2d at p. 836.)

Defendant also argues that the trial court's instructional error violated the federal Constitution, relying on a dissenting opinion in *People v. Breverman, supra*, 19 Cal.4th 142. At the murder trial in that case the court erred in not instructing the jury on the lesser included offense of voluntary manslaughter. A majority of the court declined to consider whether this error violated the federal Constitution by giving the jury an incomplete definition of malice, an element of murder; the majority held that the defendant had not preserved the issue because he had not raised it before this court or before the Court of Appeal. (*Id.* at p. 170, fn. 19.) The dissenting view, however, was that the defendant had preserved the issue: The dissent concluded the error violated the defendant's federal constitutional rights to a jury trial and to due process of law, because the trial court had inadequately instructed the jury on the elements of murder by failing to explain that the element of malice is not present when the defendant kills in the heat of passion. (*Id.* at pp. 187-195 (dis. opn. of Kennard, J.).) Here, defendant has raised the issue both in this court and in the Court of Appeal.

In contrast to *People v. Breverman, supra*, 19 Cal.4th 142, the trial court here instructed the jury on voluntary manslaughter, correctly explaining to the jury that a killing in the heat of passion is not murder. The court erred only in telling the jury that to convict defendant of voluntary manslaughter, the jury had to find that defendant intended to kill the victim. Defendant insists this instruction could have led the jury to conclude that if he lacked an intent to kill, it had to find him guilty of the more serious crime of murder. But, as previously explained, the trial court's instructions taken as a whole do not support this assertion. Thus, the court's instructional error did not violate defendant's federal constitutional rights to trial by jury or to due process of law.

## IV

The trial court also instructed the jury on an alternate theory of voluntary manslaughter: that defendant killed Fitzpatrick in "unreasonable self-defense." The court instructed the jury: "Every person who unlawfully

kills another human being without malice aforethought but with an intent to kill, is guilty of voluntary manslaughter . . . [¶] There is no malice aforethought if the killing occurred . . . in the honest but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A human being was killed, [¶] 2. The killing was unlawful, and [¶] 3. The killing was done with the intent to kill." (Brackets omitted.) Defendant contends this instruction was faulty because it did not tell the jury that unreasonable self-defense negates implied malice, and that an act resulting in death, performed with knowledge that the act endangers the life of another and with conscious disregard for life, but motivated by an unreasonable belief in the necessity of self-defense, is not murder.

In addition to the instruction quoted above, however, the trial court told the jury: "A person, who kills another person in the actual but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury, kills unlawfully, but does not harbor malice aforethought and is not guilty of murder." This instruction clearly explained that unreasonable self-defense negates *all* malice, both express and implied, and that a person who kills in unreasonable self-defense is not guilty of murder.

Although the trial court's instructions properly told the jury that an unintentional killing in unreasonable self-defense is not murder, in the companion case of *People v. Blakeley, supra,* 23 Cal.4th 82, we conclude that instructions similar to those given here do not clearly explain to the jury whether an unintentional killing in unreasonable self-defense is voluntary or involuntary manslaughter. Here, this lack of clarity could not have prejudiced defendant, because, in finding defendant guilty of second degree murder rather than voluntary or involuntary manslaughter, the jury must have necessarily concluded he did not act in unreasonable self-defense. (See *People v. Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].)

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I concur in the judgment.

I write separately to note that, although I generally concur in the opinion of the court, I do not join in any implication of approval in its reference to

the opinion of the court in the companion case of *People v. Blakeley* (2000) 23 Cal.4th 82 [96 Cal.Rptr.2d 451, 999 P.2d 675], in which I have authored a dissenting opinion.

Appellant's petition for a rehearing was denied July 19, 2000.