

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE SEP 28 2017
Fairhurst, CJ.
CHIEF JUSTICE

This opinion was filed for record
at 8-00 am on Sep 28 2017

Susan L. Carlson
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 94175-1 |
| | ) | |
| STEVEN LOUIS CANHA, | ) | En Banc |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed   SEP 2 8 2017 |
| | ) | |
| | ) | |
| | ) | |

WIGGINS, J.—We must determine whether four criminal convictions from other states are sufficiently comparable to Washington crimes that they should be included in a defendant's criminal history for sentencing purposes. Steven Canha filed a timely personal restraint petition in which he seeks to be resentenced. He claims that the trial court incorrectly included four out-of-state convictions in his offender score—one from California and three from Oregon. The trial court failed to perform a comparability analysis of these out-of-state convictions to see if they were comparable to Washington crimes as required by RCW 9.94A.525(3). We engage in a comparability analysis, conclude that three of Canha's four foreign convictions are comparable to Washington offenses, and remand the case to the superior court to resentence Canha accordingly.

## FACTS

A jury found Canha guilty of two counts of assault in the second degree and two counts of unlawful possession of a firearm in the first degree. At the sentencing hearing, the superior court calculated Canha's offender score by using four out-of-state criminal

convictions, one from California and three from Oregon. However, the court failed to perform a comparability analysis of these out-of-state convictions to see whether they were sufficiently comparable to any Washington offenses. The superior court sentenced Canha to serve 154 months.

Canha appealed his conviction to the Court of Appeals, which rejected Canha's claims of failure to suppress evidence, ineffective assistance of counsel, double jeopardy violation, and speedy trial violation. *State v. Canha*, noted at 159 Wn. App. 1044 (2011); *see* U.S. CONST. amends. V, VI. This court denied review. *State v. Canha*, 171 Wn.2d 1023, 257 P.3d 663 (2011). The United States Supreme Court also denied certiorari. *Canha v. Washington*, 565 U.S. 1067, 132 S. Ct. 776, 181 L. Ed. 2d 498 (2011).

After his direct appeal, Canha filed a timely personal restraint petition, which the Court of Appeals denied as frivolous. That same year, Canha filed a Superior Court Criminal Rule (CrR) 7.8 motion to modify his judgment and sentence. Canha argued for the first time that his offender score was miscalculated by counting the four out-of-state convictions. Benton County Superior Court transferred his motion to the Court of Appeals to be considered as a personal restraint petition. Judging the petition to be untimely, frivolous, and successive, the Court of Appeals dismissed it.

Canha filed a motion with this court to modify the Court of Appeals ruling dismissing his petition. Under RCW 10.73.090, a petitioner may file a collateral challenge within one year after a judgment becomes final (except in circumstances not present here). Canha filed his CrR 7.8 motion less than one year after the United States Supreme Court denied certiorari for his direct appeal, which is when Canha's judgment became final. Thus, we

concluded that Canha's petition was timely.[1] As a result, we granted Canha's motion to modify and remanded the petition to the Court of Appeals "to review on the merits."

In yet another procedural barrier to consideration on the merits, Canha's petition was successive, meaning that he had filed a prior unsuccessful personal restraint petition. RCW 10.73.140 prohibits the Court of Appeals from hearing successive petitions absent good cause. In effect, we directed the Court of Appeals to review this case and consider the merits despite the usual rule that the Court of Appeals cannot consider a successive petition. The Court of Appeals wrote a recommended disposition and transferred the case back to this court so that a final judgment could be issued. We accepted review of Canha's petition.

## STANDARD OF REVIEW

To obtain relief, Canha "must show either that he . . . was actually and substantially prejudiced by constitutional error or that his . . . trial suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013). Canha does not argue constitutional error, but claims that his offender score was

---

[1] At oral argument, the State argued that Canha's personal restraint petition was not timely. Wash. Supreme Court oral argument, *In re Pers. Restraint of Canha*, No. 94175-1 (May 25, 2017), at 23 min., 16 sec. to 23 min., 32 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. However, we previously and clearly concluded that it was timely. Under our law of the case doctrine, "once there is an appellate court ruling, its holding must be followed in all of the subsequent stages of the same litigation." *State v. Schwab*, 163 Wn.2d 664, 672, 185 P.3d 1151 (2008); *see also Humphrey Indus., Ltd. v. Clay Street Assocs.*, 176 Wn.2d 662, 669-70, 295 P.3d 231 (2013) (concluding that "'the parties, the trial court, and this court are bound by the holdings of [this] court on a prior appeal'" (alteration in original) (quoting *Greene v. Rothschild*, 68 Wn.2d 1, 10, 414 P.2d 1013 (1966))). Thus, the fact that Canha's petition was timely became the law of the case, unless the State proved that "justice would best be served" by reconsideration of the issue. RAP 2.5(c)(2). Here, justice would not best be served by allowing Canha's sentence, based on an incorrect offender score, to stand. Thus, we decline to reconsider our previous holding that Canha's petition was timely.

3

miscalculated. "[A] sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice." *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 868, 50 P.3d 618 (2002). And when a trial court has entered an erroneous sentence, "the defendant is entitled to be resentenced." *Id.* at 869.

## ANALYSIS

The superior court failed to conduct a comparability analysis of Canha's four out-of-state convictions before including them in his offender score. However, the parties make two important concessions in this regard. First, Canha concedes that his Oregon conviction for criminal mischief is comparable to Washington's malicious mischief in the second degree. Wash. Supreme Court oral argument, No. 94175-1 (May 25, 2017), at 1 min., 36 sec. to 1 min., 48 sec., *audio recording by TVW*, Washington State's Public Affairs Network, http://www.tvw.org. Therefore, it was properly included in his offender score. Second, the State concedes that Canha's Oregon conviction for hindering prosecution is not comparable to a Washington offense. *Id.* at 19 min., 45 sec. to 20 min., 2 sec. As a result, Canha's Oregon conviction for hindering prosecution should not have been included in his offender score.

Thus, we perform a comparability analysis only for Canha's remaining out-of-state convictions—voluntary manslaughter under California law and felon in possession of a firearm under Oregon law. We conclude that these convictions are factually comparable to Washington offenses and were properly included in Canha's offender score.

However, since Canha's Oregon conviction for hindering prosecution is not comparable to a Washington offense and should not have been included in Canha's offender score, we remand to the superior court to resentence Canha accordingly. We need not reach Canha's ineffective assistance of counsel claim for the hindering prosecution conviction, and, since Canha fails to show prejudice, we conclude that his remaining ineffective assistance of counsel claims lack merit.

I.  Calculating Offender Scores Using Out-of-State Convictions

The Sentencing Reform Act of 1981 (SRA) "created a grid of sentencing ranges which vary by the defendant's offender score and the seriousness level of the crime." *State v. Wiley*, 124 Wn.2d 679, 682, 880 P.2d 983 (1994); RCW 9.94A.510. The statute calculates a defendant's offender score based on criminal history. *Wiley*, 124 Wn.2d at 683; *see also* RCW 9.94A.525. If a defendant has out-of-state convictions, the SRA directs that those offenses be classified by determining comparable Washington offenses. *Wiley*, 124 Wn.2d at 683; *see also* RCW 9.94A.525(3).

To compare offenses, we use a two-part test. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005). First, the court analyzes legal comparability by comparing the elements of the out-of-state offense to the most comparable Washington offense. *State v. Morley*, 134 Wn.2d 588, 605-06, 952 P.2d 167 (1998). When the crimes' elements are not the same, the offenses are not legally comparable. *Id.* at 606. If the crimes are legally comparable, our analysis ends here and the crime is included in the offender score.

Second, if the offenses are not legally comparable, the court analyzes factual comparability. *Lavery*, 154 Wn.2d at 255-57. Offenses are factually comparable when

5

the defendant's conduct would have violated a Washington statute. *Morley*, 134 Wn.2d at 606 ("'The key inquiry is under what Washington statute could the defendant have been convicted if he or she *had committed the same acts in Washington*.'" (quoting *State v. McCorkle*, 88 Wn. App. 485, 495, 945 P.2d 736 (1997), *aff'd*, 137 Wn.2d 490, 973 P.2d 461 (1991))). To comply with *Apprendi*,[2] the court may rely only on facts that were admitted, stipulated, or proved to the fact finder beyond a reasonable doubt. *Lavery*, 154 Wn.2d at 255; *see also State v. Olsen*, 180 Wn.2d 468, 473-74, 325 P.3d 187 (2014). Any other "[f]acts or allegations contained in the record, if not directly related to the elements of the charged crime, may not have been sufficiently proven in the trial." *Morley*, 134 Wn.2d at 606.

Here, the trial court calculated Canha's offender score using four out-of-state convictions but it failed to perform a comparability analysis.[3] This court could either remand to the superior court for a comparability analysis, *see State v. Thiefault*, 160 Wn.2d 409, 420, 158 P.3d 580 (2007), or perform the comparability analysis and remand to the superior court for resentencing if necessary. *See Lavery*, 154 Wn.2d at 255-58. Here, we choose to perform the comparability analysis and remand for resentencing.

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

[3] Canha did not affirmatively acknowledge at sentencing that his foreign convictions were properly included in his offender score. He merely failed to object to their inclusion. Therefore, he did not waive his right to challenge whether his offender score was miscalculated. *See State v. Ross*, 152 Wn.2d 220, 231-33, 95 P.3d 1225 (2004).

II.  California Voluntary Manslaughter

Canha's conviction for voluntary manslaughter in California is not legally comparable to Washington's second degree murder statute, but it is factually comparable. Consequently, it was appropriately included in Canha's offender score.

*A. Legal Comparability*

In 1991, Canha pleaded guilty to voluntary manslaughter in California. The California manslaughter statute provides that a person is guilty of manslaughter in three instances:

> Manslaughter is the unlawful killing of a human being without malice. It is of three kinds:
>
> (a) Voluntary—upon a sudden quarrel or heat of passion.
>
> (b) Involuntary—in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. This subdivision shall not apply to acts committed in the driving of a vehicle.
>
> (c) Vehicular . . . .

CAL. PENAL CODE § 192(a)-(c) (West 1988). The killing must be without malice, which is defined by statute:

> (4) The words "malice" and "maliciously" import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.

CAL. PENAL CODE § 7(4) (West 1988).

In 1991, there were three possible comparable offenses in Washington: manslaughter in the first degree, manslaughter in the second degree, and murder in the second degree. However, none of these offenses is legally comparable to California's manslaughter statute because none has the same alternative means as manslaughter.

7

1. <u>Washington Manslaughter in the First Degree</u>

The first possible comparable offense in Washington is first degree manslaughter. Washington manslaughter in the first degree requires a reckless killing or the unlawful killing of an unborn child:

> (1) A person is guilty of manslaughter in the first degree when:
>
> (a) He recklessly causes the death of another person; or
>
> (b) He intentionally and unlawfully kills an unborn quick child by inflicting any injury upon the mother of such child.

Former RCW 9A.32.060 (1975). Washington defined "reckless" as a conscious disregard of substantial risk:

> RECKLESSNESS. A person is reckless or acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation.

Former RCW 9A.08.010(1)(c) (1975).

Washington's first degree manslaughter is not legally comparable to California's manslaughter statute. The California statute does not require a reckless killing, nor does it criminalize the intentional killing of an unborn child. *See* CAL. PENAL CODE § 192 (West 1988). We must look elsewhere for a legally comparable Washington offense.

2. <u>Washington Manslaughter in the Second Degree</u>

Another possible comparable Washington offense is second degree manslaughter. Washington manslaughter in the second degree requires a killing as a result of criminal negligence:

> (1) A person is guilty of manslaughter in the second degree when, with criminal negligence, he causes the death of another person.
>
> (2) Manslaughter in the second degree is a Class C felony.

8

Former RCW 9A.32.070 (1975). A person is criminally negligent when he or she fails to be aware of a substantial risk and to exercise the requisite care of a reasonable person:

> A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.

Former RCW 9A.08.010(1)(d) (1975).

Washington second degree manslaughter is not comparable to California voluntary manslaughter. California voluntary manslaughter is broader, criminalizing behavior like vehicular manslaughter, not only killings resulting from criminal negligence. *See* CAL. PENAL CODE § 192 (West 1988). Consequently, we must examine another statute to find legal comparability.

3. Washington Murder in the Second Degree

The final potentially comparable Washington offense is second degree murder. The Washington crime requires killing someone without premeditation or during the course of a felony:

> (1) A person is guilty of murder in the second degree when:
>
> (a) With intent to cause the death of another person but without premeditation, he causes the death of such person or of a third person; or
>
> (b) He commit or attempts to commit any felony . . . and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants . . . .

Former RCW 9A.32.050 (1975).

Washington second degree murder is not legally comparable to California voluntary manslaughter. California does not criminalize felony murder in its

9

manslaughter statute. *See* CAL. PENAL CODE § 192 (West 1988) (criminalizing killings committed during unlawful activity not amounting to a felony). Nor does the Washington statute encompass involuntary manslaughter since Washington's statute requires an intent to kill. *See* former RCW 9A.32.050(1)(a). Since none of these Washington statutes has the same alternative means as the California manslaughter statute—voluntary, involuntary, and vehicular—they are not legally comparable. Thus, we move to the factual comparability analysis.

### B. Factual Comparability

California initially charged Canha with murder. Instead of proceeding to trial on the murder charge, Canha pleaded guilty to the lesser included offense of voluntary manslaughter. *See People v. Barton*, 12 Cal. 4th 186, 199, 906 P.2d 531, 47 Cal. Rptr. 2d 569 (1995) (holding that manslaughter is a lesser included offense of murder).[4] Canha admitted that he committed voluntary manslaughter. Therefore, we must discern what the elements of California voluntary manslaughter are and whether Canha's conduct of committing voluntary manslaughter would have violated a Washington statute.

When we compare statutes, we apply the law existing at the time of the conviction. *See Lavery*, 154 Wn.2d at 255 (stating that "the elements of the out of state crime must be compared to the elements of a Washington criminal statute *in effect when the foreign crime was committed*" (emphasis added)); *see also Morley*, 134 Wn.2d at 606 (same). Voluntary manslaughter required a killing to be done "without malice . . . upon a sudden

---

[4] This court may look to and rely on other state case law interpreting foreign statutes. *See, e.g., Olsen*, 180 Wn.2d at 478-79 (examining and quoting California case law to aid in interpreting California law).

10

quarrel or heat of passion." CAL. PENAL CODE § 192(a) (West 1988). At the time of Canha's conviction in 1991 and until 2000, California required a specific intent to kill for a voluntary manslaughter conviction. *See, e.g., People v. Lee*, 20 Cal. 4th 47, 59, 971 P.2d 1001, 82 Cal. Rptr. 2d 625 (1999) (discussing when "an intentional killing is reduced to voluntary manslaughter"); *People v. Hawkins*, 10 Cal. 4th 920, 958, 897 P.2d 574, 42 Cal. Rptr. 2d 636 (1995) (stating that "voluntary manslaughter presupposes an intent to kill"), *abrogated by People v. Lasko*, 23 Cal. 4th 101, 999 P.2d 666 (2000); *People v. Brubaker*, 53 Cal. 2d 37, 44, 346 P.2d 8 (1959) ("Voluntary manslaughter is a willful act, characterized by the presence of an intent to kill, engendered by sufficient provocation and by the absence of premeditation, deliberation and (by presumption of law) malice aforethought." (emphasis omitted)), *abrogated by Lasko*, 23 Cal. 4th 101.[5] Thus, when Canha pleaded guilty to voluntary manslaughter in 1991, he pleaded guilty to an intentional killing done in the heat of passion.[6] *See Olsen*, 180 Wn.2d at 478-79

---

[5] *See also People v. Breverman*, 19 Cal. 4th 142, 153, 960 P.2d 1094, 77 Cal. Rptr. 2d 870 (1998) (describing that "'[a] defendant who commits an intentional and unlawful killing but who lacks malice is guilty of . . . voluntary manslaughter'" (alteration in original) (citations omitted) (quoting *Barton*, 12 Cal. 4th at 199)); *Barton*, 12 Cal. 4th at 199 (specifying that "an intentional and unlawful killing" without malice is voluntary manslaughter); *People v. Ray*, 14 Cal. 3d 20, 28, 533 P.2d 1017, 120 Cal. Rptr. 377 (1975) ("If because of diminished capacity the perpetrator is unable to entertain malice but nevertheless is found to be able to form the intent to kill the crime is voluntary manslaughter."), *abrogated by Lasko*, 23 Cal. 4th 101; *People v. Graham*, 71 Cal. 2d 303, 315, 455 P.2d 153, 78 Cal. Rptr. 217 (1969) (stating that voluntary manslaughter "is a homicide which may be intentional, voluntary, deliberate, premeditated, and unprovoked"); *People v. Valentine*, 28 Cal. 2d 121, 130-31, 169 P.2d 1 (1946) (acknowledging that the existence of a specific intent to kill exists in voluntary manslaughter).

[6] In 2000, the California Supreme Court overruled its case law holding that voluntary manslaughter required an intent to kill. *Lasko*, 23 Cal. 4th 101. Now, a defendant may be convicted of voluntary manslaughter when he or she has either an "'intent to kill *or* a conscious disregard for life.'" *People v. Bryant*, 56 Cal. 4th 959, 968, 301 P.3d 1136, 157 Cal. Rptr. 3d 522 (2013). However, as discussed *supra*, we apply the law existing at the time of Canha's conviction. And when Canha pleaded guilty to voluntary manslaughter in 1991, an intent to kill was a necessary element of the offense under California law. *See Hawkins*, 10 Cal. 4th at 958-59 (stating that "voluntary manslaughter

("Moreover, '[a] guilty plea "admits every element of the crime charged."'" (alteration in original) (quoting *People v. Wallace*, 33 Cal. 4th 738, 749, 93 P.3d 1037, 16 Cal. Rptr. 3d 96 (2004)) (quoting *People v. Thomas*, 41 Cal. 3d 837, 844 n.6, 718 P.2d 94, 226 Cal. Rptr. 107 (1986))).

An intentional killing in California, when done in the heat of passion, may be reduced from murder to manslaughter. *Lee*, 20 Cal. 4th at 59 (concluding that "an intentional killing is reduced to voluntary manslaughter . . . when the defendant acts upon a sudden quarrel or heat of passion on sufficient provocation"). Similarly, in Washington, heat of passion negates premeditation, justifying a charge of second degree murder. *State v. Frederick*, 20 Wn. App. 175, 182, 579 P.2d 390 (1978). Thus, of the possible comparable Washington statutes discussed above, murder in the second degree is closest to California voluntary manslaughter. Washington second degree murder requires an "intent to cause the death of another person but without premeditation." Former RCW 9A.32.050(1)(a).

Canha claims that his voluntary manslaughter offense cannot be comparable to second degree murder because voluntary manslaughter does not require the specific intent to kill someone, while second degree murder does. But, as discussed above, at the time of Canha's conviction, voluntary manslaughter in California did require an intent to kill and Canha necessarily pleaded guilty to such an intent. *See Hawkins*, 10 Cal. 4th

---

presupposes an intent to kill" and that "'[v]oluntary manslaughter is a willful act, characterized by the presence of an intent to kill'" (quoting *Brubaker*, 53 Cal. 2d at 44)), *abrogated by Lasko*, 23 Cal. 4th 101. Thus, the fact that California no longer requires an intent to kill for a conviction of voluntary manslaughter is of no consequence to Canha, who necessarily pleaded guilty to an intentional killing in 1991. *See Olsen*, 180 Wn.2d at 478-79.

at 958 ("Defendant's argument is based on the premise that malice aforethought and intent to kill describe identical mental states. . . . But that premise is fallacious. It has been long held that voluntary manslaughter presupposes an intent to kill, but that, in spite of that intent, certain statutorily defined mitigating circumstances negate the element of malice aforethought."). Therefore, both the California statute and the Washington statute required a specific intent to kill and also required that the killing be done in the heat of passion or without premeditation. As a result, Canha pleaded guilty to an intentional killing done in the heat of passion or without premeditation. *See Olsen*, 180 Wn.2d at 478 (relying on California law to conclude that "'[a] guilty plea admits every element of the crime charged'" (internal quotation marks omitted) (quoting *Wallace*, 33 Cal. 4th at 749)). Therefore, his voluntary manslaughter conviction is factually comparable to second degree murder; Canha's conduct of committing voluntary manslaughter would have violated Washington's second degree murder statute. Thus, the voluntary manslaughter conviction was properly included in Canha's offender score.

III.    Oregon Felon in Possession of a Firearm

Canha's conviction for felon in possession of a firearm in Oregon is factually comparable to Washington's first degree unlawful possession of a firearm. Therefore, it was appropriately included in Canha's offender score.

*A. Legal Comparability*

Oregon convicted Canha as a felon in possession of a firearm. A person could be convicted under the Oregon statute if he or she had possession of a firearm after previously being convicted of a felony:

> Any person who has been convicted of a *felony* under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any firearm, commits the crime of felon in possession of a firearm.

Former OR. REV. STAT. § 166.270(1) (2001) (emphasis added).

The comparable Washington statute at the time was first degree unlawful possession of a firearm. In contrast to the Oregon statute, an individual could be convicted in Washington only if he or she had been previously convicted of a serious offense:

> A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted in this state or elsewhere of *any serious offense* as defined in this chapter.

Former RCW 9.41.040(1)(a) (1997) (emphasis added). A serious offense in Washington was defined by statute:

> "Serious offense" means any of the following felonies or a felony attempt to commit any of the following felonies, as now existing or hereafter amended:
> (a) Any crime of violence; [or]
> . . . .
> (o) Any felony offense in effect at any time prior to June 6, 1996, that is comparable to a serious offense, or any federal or out-of-state conviction for an offense that under the laws of this state would be a felony classified as a serious offense.

Former RCW 9.41.010(12) (1997).

Oregon's statute is broader than Washington's statute. Oregon requires that a person be convicted of a felony, while Washington requires that a person be convicted of a serious offense. *Compare* former OR. REV. STAT. § 166.270 (1999), *with* former RCW 9.41.040(1)(a). The definition of a "serious offense" does not encompass all felonies;

14

therefore, it is possible for a person to have been convicted of a felony without committing a serious offense in Washington. Since the Oregon statute is broader, it is not legally comparable to the Washington statute. *See Morley*, 134 Wn.2d at 606. Because the Oregon statute is not legally comparable, we must determine whether Canha's conviction was factually comparable to the Washington statute.

### B. Factual Comparability

To be convicted under the Washington statute for first degree unlawful possession of a firearm, Canha must have (1) had a firearm in his possession or control and (2) been previously convicted of a serious offense. Former RCW 9.41.040(1)(a) (2000). Since Canha's conviction meets both these requirements, we conclude that the offense is factually comparable.

Oregon charged and convicted Canha of "unlawfully and knowingly hav[ing] in [his] possession a firearm." This satisfies the Washington statute's first requirement that Canha have a firearm in his possession or control.

Canha pleaded guilty to voluntary manslaughter in California in 1991. Killing someone satisfies the definition of a "serious offense" since it is a "'[c]rime of violence.'"[7]

---

[7] At trial in 2008, Canha stipulated that he had "previously been convicted of a serious offense." Now, Canha argues that he was not previously convicted of a serious offense. Under the doctrine of judicial estoppel, we generally "'preclude[] a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Miller v. Campbell*, 164 Wn.2d 529, 539, 192 P.3d 352 (2008) (quoting *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007)). We need not reach this issue, however, because we resolve the issue under the factual comparability analysis.

Canha also asserts that his trial counsel "was defective for not ascertaining if the voluntary manslaughter conviction was comparable to a serious offense in Washington." Since the voluntary manslaughter conviction was comparable to a serious offense in Washington, this failure by trial counsel did not prejudice Canha.

Former RCW 9.41.010(12). Consequently, the Washington statute's second requirement that Canha was previously convicted of a serious offense is met.

Because Canha had possession of a firearm and had previously been convicted of a serious offense, his conviction in Oregon for felon in possession of a firearm is factually comparable to a Washington felony offense. Thus, it was properly included in his offender score.

## IV.   Ineffective Assistance of Counsel

Canha claims that his trial counsel and appellate counsel on direct appeal were ineffective for failing to raise these comparability issues. Because the State concedes that Canha's hindering prosecution conviction is not comparable to a Washington offense, we need not reach Canha's ineffective assistance of counsel claim for that conviction. We conclude that the remaining claims of ineffective assistance of counsel lack merit.

To prevail on his ineffective assistance of counsel claims, Canha must show (1) that counsel performed deficiently and (2) that counsels' deficient performance was prejudicial. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). To show prejudice, a defendant must show that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Id.* at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

Here, the State concedes that the inclusion of the Oregon hindering prosecution conviction in Canha's offender score was erroneous. Consequently, we remand for resentencing to correct Canha's offender score on this point. Thus, we need not reach the question of whether counsel was ineffective for failing to raise the comparability

16

analysis issue for this conviction because the result would be the same. Because Canha's three other foreign convictions were properly included in his offender score, Canha cannot show that counsels' failures to raise the comparability analysis issues for these convictions prejudiced him. Since Canha cannot show prejudice, his remaining claims for ineffective assistance of counsel lack merit.

## CONCLUSION

In conclusion, three of Canha's four out-of-state convictions were properly included in Canha's offender score. Canha's conviction for California voluntary manslaughter is factually comparable to Washington's second degree murder. Canha's Oregon conviction for felon in possession of a firearm is factually comparable to Washington's first degree unlawful possession of a firearm. Canha concedes that his Oregon conviction for first degree criminal mischief is comparable to Washington's second degree malicious mischief. But, the State concedes that Canha's Oregon conviction for hindering prosecution is not comparable to a Washington offense. As a result, it was erroneously included in Canha's offender score. Therefore, Canha is entitled to be resentenced. We remand to the trial court to resentence Canha accordingly and for other proceedings consistent with this opinion, if any.

_____ Wiggins, J. _____

WE CONCUR.

_____ Fairhurst, C.J. _____

_____ Johnson, J. _____

_____ Madsen, J. _____

_____ Owens, J. _____

_____ Stephens, J. _____

_____ González, J. _____

_____ Gordon McCloud, J. _____

_____ Yu, J. _____