Filed 5/27/15  P. v. Hidalgo CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B252675 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA067967) |
| v. | |
| ELBERT ERNESTO HIDALGO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan M. Speer, Judge.  Affirmed as Modified.

Jeffrey J. Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Elbert Ernesto Hidalgo of first degree residential burglary (Pen. Code, § 459)[1] and possession of a smoking device (Health & Saf. Code, § 11364, subd. (a)). In a bifurcated proceeding, the trial court found that defendant had suffered two prior strike convictions (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), two prior serious felony convictions (§ 667, subd. (a)(1)), and two prior prison terms (§ 667.5, subd. (b)). The trial court struck one of defendant's prior strikes, and sentenced him to a term of 22 years in state prison. He appeals from the judgment of conviction, contending that the trial court erred in (1) ordering him shackled during trial, and (2) staying rather than striking his prior prison terms in sentencing. We modify the judgment to strike the prior prison terms and otherwise affirm.

## BACKGROUND

Because the evidence supporting defendant's convictions is not relevant to the issues on appeal, we only briefly summarize it. Defendant lived in an apartment building a few hundred feet away from the apartment on Victory Boulevard in which Graciela Lara lived with her one-year-old daughter. On May 19, 2011, Lara heard a knock on her door. She did not answer. After she heard two more knocks, she went to the door, but no one was there. As she walked back to the bedroom, she heard the window opening. She opened the curtains and observed defendant with his hands on the open window and window sill. The window screen had been removed. Lara screamed, closed the window, and called 911. Defendant fled. Lara participated in the drawing of a composite sketch of the burglar, and on May 26, 2011, identified defendant's photograph in a photo lineup.

---

[1] Undesignated section references are to the Penal Code.

In a search of defendant's apartment, Los Angeles Police Officer Christopher Hookstra recovered a glass pipe containing methamphetamine residue. After his arrest, defendant told Officer Hookstra that he passed by Lara's apartment and looked in through the bedroom window. Had he seen a small item nearby, he would have taken it.

The prosecutor read into the record the following incriminating statements defendant had made in court in September 2011. He said, in part: "I knocked on the door. I made every intent to make sure nobody was inside. The only thing I managed to do was take off the screen. . . . I didn't open the window. I didn't put no hands inside of the place." He also said, "I knocked on the door. I made an attempt to make sure nobody was there. Three minutes, not one minute. Not two, three knocks. Three minutes."


**DISCUSSION**

I.    *Physical Restraints*

Defendant contends that the trial court erred in ordering that he be restrained by a "stealth belt" during his jury trial. We disagree.

"'[A] defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints.' [Citation.] But we will not overturn a trial court's decision to restrain a defendant absent 'a showing of a manifest abuse of discretion.' [Citation.] We have said that a ""'[m]anifest need' arises only'"" when the defendant has been unruly, has ""'announced [an] intention to escape,'"" or when the evidence shows the defendant would likely ""'"disrupt the judicial process"'"" if left unrestrained. [Citation.] ""'"The imposition of physical restraints in the absence of a record showing of violence or a threat of violence or

other nonconforming conduct will be deemed to constitute an abuse of discretion.'"'" [Citation.]" (*People v. Wallace* (2008) 44 Cal.4th 1032, 1050 (*Wallace*).)

Here, on June 11, 2013, before jury selection began, the court made a lengthy record of the reasons why defendant should be physically restrained:

"The Court has received a number of disciplinary reports from the L.A. County Sheriff's Department. They are requesting a stealth belt be applied.

"We have a discipline report from July 10, 2011, where the defendant assaulted Deputies Stephenson and Partida.

"Discipline report from August 19, 2011, where the defendant attacked and assaulted Deputy Campa. . . .

"Discipline report from July 28, 2011, where the defendant verbally assaulted two deputies.

"Discipline report from March 27, 2012, where the defendant refused to obey orders and created an operational disturbance.

"Discipline report from October 8, 2012, the defendant was a K-10. He allegedly got into a fight, jumped on one of the deputies.

"Incident report from 2/27/2013, defendant refused to obey orders, created false medical emergency.

"The defendant has – the Court is privy personally – the defendant has made death threats against prior counsel.

"He's been disruptive in the courtroom.

"Has gone out 1368 partially due to his failure to cooperate and to act in an orderly manner in the courtroom.[2]

---

**2**     In August 2012, the court declared a doubt as to defendant's competence to stand trial. On February 1, 2013, the date set for his competency hearing, defendant refused to

"He has refused to come to court on a number of occasions. The court has had to issue extraction orders.

"He's antagonistic to his attorney, as indicated by the multiple *Marsden* hearings, and refusing to speak to counsel.[3]

"The court feels there is an manifest need for the least restrictive restraint, which would be a stealth belt. It would be invisible to the jurors. He'd be waist chained to the chair. Only his hands would be completely free."

Defense counsel did not formally oppose restraints, stating only, "Submit it, Your Honor." The court then ruled that "the deputies have permission to place a stealth belt on the defendant during all proceedings in open court."

On appeal, defendant contends that the court's recitation of the record was "grossly distorted or simply incorrect." Defendant quarrels with the characterization of defendant's competency proceedings as having involved disruptive behavior, and asserts that the incidents of alleged jail misconduct were remote in time or minor in nature. Defendant minimizes his refusal to come to court during his competency proceedings and the resultant extraction orders as involving conduct that did not occur in the courtroom. Similarly, he characterizes

---

come to court and the court issued an extraction order. The hearing was continued to February 4, 2013, at which defendant waived his right to jury on his competency. At the next scheduled date for the competency hearing, February 22, 2013, defendant again refused to come to court and the court issued an extraction order. He finally appeared on March 8, 2013, and the competency hearing was continued again. On the next court date, defendant was a miss-out and the court issued its third extraction order. Defendant appeared on March 29, 2013, and the court found him competent to stand trial. At the next scheduled pretrial conference on May 2, 2013, defendant did not appear, and the court issued its fourth extraction order. Trial commenced with jury selection on June 11, 2013.

3       *Marsden* hearings were held on December 2, 2011, July 18, 2012, and May 8, 2013.

5

his dissatisfaction with his trial attorney and his death threat against his prior attorney as not amounting to disruptive behavior in court.

Defendant does not dispute that all of the matters referred to by the court (with the exception of defendant being disruptive in court in connection with his competency proceedings) occurred. Moreover, his minimizing characterizations of his behavior do not demonstrate that the court's view of his conduct, taken as a whole, was unreasonable, or that the decision to impose the stealth belt – the least restrictive restraint -- was an abuse of discretion. In short, defendant had twice physically assaulted deputies while in custody, had been disruptive in custody on three other occasions (including a fight in which he jumped on a deputy), had threatened the life of one attorney, in multiple *Marsden* hearings had demonstrated antagonism with his subsequent attorney, and had refused to come to court on four occasions resulting in the issuance of orders to forcibly extract him. On these facts, the court was not unreasonable in deeming such conduct to demonstrate a manifest need for physical restraints. Indeed, similar conduct has repeatedly been found sufficient to support the imposition of physical restraints. (*Wallace, supra,* 44 Cal.4th at p. 1050 [evidence sufficient to support restraints where "the record shows defendant had been cited for many rules violations while awaiting trial in the county jail, which included five jailhouse fights and possession of illegal razors"]; *People v. Combs* (2004) 34 Cal.4th 821, 837-838 [restraints justified where psychologist reported that defendant was likely to be disruptive, and prosecutor represented that defendant had possessed two shanks in jail and had threatened jail deputies]; *People v. Hawkins* (1995) 10 Cal.4th 920, 944 ["defendant's three reported fistfights in prison, together with his extensive criminal history, are sufficient to support the trial court's order to shackle defendant, inasmuch as they demonstrate instances of 'violence or nonconforming

6

conduct' while in custody"], disapproved on another point in *People v. Lasko* (2000) 23 Cal. 4th 101, 110.) We conclude that the trial court did not abuse its discretion.

In any event, even assuming that the trial court abused its discretion, "defendant suffered no possible prejudice. Determining whether or not the erroneous imposition of restraints on a defendant was prejudicial requires us to consider the 'possible prejudice in the minds of the jurors, the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand.' [Citation.] The first and last of these considerations are the most significant." (*Wallace, supra,* 44 Cal.4th at pp. 1050-1051.)

The court described the stealth belt that was used: "It would be invisible to the jurors. He'd be waist chained to the chair. Only his hands would be completely free." Defendant points to nothing in the record to suggest that the jury was aware of the restraints, or that the restraints in any way interfered with his ability to participate in the trial. He speculates that the restraints might have somehow increased his paranoia and his antagonism with his attorney, thereby interfering with his ability to decide whether to testify. However, nothing in the record supports this assertion. Defendant points to his lengthy colloquy with the court and defense counsel concerning whether he should testify. However, the record shows that defendant's dilemma had nothing to do with his restraints. It had to do with his attorney's advice that he not testify because he would be impeached with his prior felony convictions, and defendant's insistence that his attorney present a theory under which the police conspired to plant evidence (a theory that the court noted was unsupported by even "a scintilla of proof"). Ultimately,

7

defendant formally waived his right to testify ("I will not be testifying on my behalf at this point"), and the presence of restraints had nothing to do with his decision. In sum, defendant suffered no possible prejudice from the restraints. (*Wallace, supra*, 44 Cal.4th at pp. 1050-1051.)

II.     *Prior Prison Terms*

Defendant contends, and respondent agrees, that the trial court erred in staying rather than striking the one-year enhancements for two prior prison terms (§ 667.5, subd. (b)), because those prison terms related to prior convictions under section 667, subdivision (a)(1) for which he was sentenced to five years each. In that situation, only the greater punishment may be imposed. (*People v. Jones* (1993) 5 Cal.4th 1142, 1149, 1153.) Thus, rather than being stayed, the one-year enhancements under section 667.5, subdivision (b) must be stricken.

## DISPOSITION

The judgment is modified to reflect that the enhancements for the two prior prison terms under section 667.5, subdivision (b) are stricken. The clerk of the superior court is directed to prepare a corrected abstract of judgment and forward it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.

9