Filed 6/22/21  P. v. Weiss CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073330 |
| v. | (Super.Ct.No. FVI18001967) |
| JAYSON THOMAS WEISS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Cara D. Hutson, Judge. Affirmed.

Richard D. Power and Lynelle K. Hee, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

Jayson Weiss intervened in a physical fight between his landlord and another resident, and the resident stopped breathing while Weiss had her pinned to the ground with his arm across her upper chest or throat. Weiss then hid the body in a recycling bin where it decomposed for months after the landlord covered the body in cement.

A jury found Weiss not guilty of murder but found him guilty of voluntary manslaughter. The evidence against him included testimony of his landlord, who herself had pled guilty to voluntary manslaughter and agreed to testify as part of her plea.

Weiss appeals on three grounds. First, he argues there was insufficient evidence he acted with conscious disregard for the victim's life and there was no support for a sudden quarrel heat of passion conviction because the quarrel arose between the victim and his landlord. Second, he argues there was insufficient evidence corroborating the testimony of his landlord, in violation of the accomplice testimony statute. Third, he argues there was insufficient evidence he proximately caused the death because the forensic pathologist couldn't determine an exact cause due to the decomposition of the body and because there were other potential causes, such as the presence of narcotics in the body.

We conclude substantial evidence supports the conviction and therefore affirm.

# I

# FACTS

A. *Weiss Moves into Rector's House and They Attempt to Evict Judith*

In December 2016, Jayson Weiss and his girlfriend Vanell Velasquez moved into Lori Rector's house in Victorville, where they lived with Rector and, briefly, with

another roommate named Judith.[1] The two moved from a house next door because Weiss was out of work and had no income.

Rector said he and Velasquez could live with her rent-free and start paying rent once they got back on their feet. In the meanwhile, Weiss said, Rector expected him to help keep order in the house. "There was a number of people coming and going from the house . . . not including people that were living there. But other people would come for the night or so. And Lori wanted me to help her get them out."

Weiss didn't know Judith well, but became acquainted with her over the few weeks they lived together. However, Rector was unhappy with Judith from the time he moved in. She blamed Judith for lying, stealing, and slipping Xanax into her coffee. Weiss told police Judith had been stealing from Rector, and she had used other people's personal information to open cable accounts so they wouldn't have to pay. Weiss said he had loaned his iPad to Judith, and she hadn't returned it.

After the New Year, Rector took steps to evict Judith. Judith was away for a couple days around New Year's Eve and no one knew when she would return. While she was gone, they all helped move Judith's belongings from her bedroom and stack them in the hallway. Weiss and Velasquez denied moving Judith's things out of her room, but Weiss said he did stack and organize them once they had been removed.

---

[1] There is a disagreement in the record about Judith's surname, which we omit anyway in the interest of confidentiality.

B. *The Eviction Causes a Fight Which Ends in Judith's Death*

Judith returned the morning of January 2. According to Rector, at first, Judith was all bouncy until she saw where her things were and then she became enraged. She demanded to know why her things had been moved, and Rector replied, "Because I want you to leave my house." Soon they were screaming at each other, and Judith picked up a stack of books and threw them at Rector who was sitting on a couch in the living room.

The altercation quickly degenerated into a fight. At first, they punched and threw objects at each other, but Judith was more aggressive and gained the upper hand. Though she was smaller, Judith managed to get on top of Rector who was laying on the ground. Judith punched Rector in the face, pulled her hair, scratched her face, and gouged Rector's eyes with her thumbs. Rector tried to defend herself against the blows and struggled to free herself.

At that point, Weiss and a friend of Rector's named Gustavo intervened. Judith still had Rector pinned, so Weiss put his arms around Judith's torso and pulled her away while Gustavo pulled Rector in the other direction. Judith continued to kick and fight. When Gustavo released Rector, he left the house, and Rector went over and held down Judith's legs while Weiss held her upper body. Rector and Judith continued to argue and Judith kept fighting to free herself.

Weiss said Rector came at Judith after Gustavo released her, and she precipitated a second round of the fight. He said he again attempted to separate Judith and Rector, and in their struggle he and Judith fell to the floor. Judith continued to fight. Her attempts to

break free prompted Rector to hold Judith's legs and hit her with a broomstick. Weiss was positioned above Judith. He had one knee on the ground, his other leg across Judith's legs, and one arm holding her across the chest. Weiss told a detective the arm across her chest "was close to her neck. And he had his other arm, trying to keep Lori away. At one point the table broke, so he had to try to keep the table from falling." He told the detective "as he was pushing down his forearm, he may have prevented her from breathing as [his arm] was across her neck."

Rector testified Weiss used his right forearm to push down on Judith's upper torso and also used his left hand to cover her mouth. She said they were positioned with "[h]er laying down. Him covering, pinning her down with an arm and covering her mouth." She said he held one arm across the breast area, below the throat and his other hand was over her mouth. According to a detective, Rector reported the same thing in an interview after law enforcement found the body.

After Rector testified, Weiss denied placing his hand over Judith's mouth or nose; he told the jury he placed one arm across her chest. However, both witnesses agreed Judith stopped breathing and went limp while Weiss was restraining her. When he noticed she wasn't breathing, Weiss shook Judith to see if she was pretending, but she didn't respond and never regained consciousness.

When they noticed Judith had lost consciousness, Weiss began performing CPR and yelled for Velasquez to come out from the bedroom to help. When Velasquez

5

emerged, she found Weiss on top of Judith, unsuccessfully attempting to resuscitate her. Velasquez returned to her room, frightened, without assisting.

When it was clear Judith was dead, no one called law enforcement or sought medical assistance. Weiss said Rector told him to get rid of the body. He said she told him not to call the police and threatened him when he initially refused to help, and said he feared retribution from Rector if he reported the death to authorities.

At some point during the fight, Weiss asked Velasquez to come out from their bedroom and search for his iPad in Judith's car. Both Velasquez and Rector said Weiss took Judith's keys from her jacket pocket while he was restraining her and handed them to Velasquez. Weiss said he didn't retrieve the keys and give them to Velasquez until Judith had died. Velasquez took the keys, went outside, and looked into the car, but didn't open the door. Instead, she stood outside long enough to make Weiss think she had searched for the iPad. She then went back into the house and saw Judith on top of Rector as the two women fought. She told Weiss she couldn't find the iPad and retreated to her bedroom.

C. *Weiss Hides Judith's Body in a Recycling Bin*

Weiss told Rector to leave the house and go find Gustavo. She got into her vehicle and drove away. According to Rector, she returned a couple hours later, but Weiss told her "to go away for a little while longer."

When Rector returned with Gustavo about an hour and forty-five minutes later, Judith's body and her car were gone. Rector asked Weiss what happened to the body, and

6

he responded, "Don't worry about it." Weiss later admitted picking up the body, folding it into a fetal position, and placing it in the recycling bin, which he left in Rector's backyard.

According to Rector, she found the body about six months later, still in a recycling bin in her backyard. Rector said she poured a bag of dry cement into the bin. Weiss said he didn't tell Rector to do to that.

After Judith's killing, Velasquez isolated herself in her bedroom for a week, explaining she was scared and "didn't really know what to do." She said she didn't know what happened to Judith's body after the killing. Six months later, she was cleaning up the backyard and moved toward the recycling bin, but Weiss stopped her from getting too close. At some point after that, Weiss and Velasquez moved out of the house. Velasquez said she didn't learn Judith's body was inside the bin until months later.

D. *The Police Find the Body and Conduct a Forensic Analysis*

Law enforcement found Judith's body when sheriff's deputies searched the home with Rector's consent as part of their investigation into Judith's disappearance. A sheriff's dog indicated something was in the recycling bin. A deputy noticed the bin contained a layer of trash and a layer of cement. They suspected the bin was filled with cement because it was unusually heavy. They then tipped the bin over and tapped on its sides until the cement came loose. They then lifted the bin away and saw body parts protruding from the block of cement.

A forensic pathologist performed an autopsy and found Judith's body had severely decomposed. The pathologist concluded the cause of death was homicide by unspecified means, but he couldn't identify the exact cause. He said he didn't see hemorrhaging around the throat which could indicate strangulation or other trauma. However, he said he couldn't rule out asphyxiation as the cause of death because there are other ways to cause asphyxiation which leave no signs on the body

The pathologist said asphyxiation can be caused by applying pressure to the upper chest or by covering the mouth and nose. He said when a person loses oxygen to the brain, they become unconscious within 10 to 15 seconds. However, because a person "can bounce back" after 30 seconds if oxygen is restored, a longer amount of time than 15 seconds is needed to deprive the victim of enough oxygen to cause brain damage. He said death may result within minutes after a person loses consciousness from lack of oxygen, depending on their age, build, and athleticism.

He said his inability to establish a specific cause of death resulted from how much the body had decomposed, not conflicting evidence. The body no longer had eyes, the organs inside the abdomen and pelvis were gone, and only clumps of tissue remained inside the brain and the chest cavities. He wasn't able to collect adequate samples of the heart, brain, or lungs. He said Judith's clothing bore no punctures, tears, or rips, and didn't show blood stains. He saw no signs of fractures to the facial bones or the ribs. Though he found trace amounts of amphetamine and methamphetamine in tissue retrieved from the chest cavity, he didn't know how recently she had taken the drugs.

E.  *The Jury Convicts Weiss of Voluntary Manslaughter*

The San Bernardino County District Attorney charged both Weiss and Rector with murder. Weiss pled not guilty, but Rector pled guilty to voluntary manslaughter and was sentenced to 11 years in prison. As part of her plea, she agreed to testify at Weiss's trial.

At the close of the People's case, Weiss moved to dismiss the murder charge. (Pen. Code, § 1118.1.) The court denied his motion.

After the close of evidence, the jury found Weiss not guilty of first or second degree murder. However, they found him guilty of voluntary manslaughter. Weiss moved for a new trial based on insufficiency of the evidence and requested in the alternative that the conviction be reduced to a lesser offense. The court denied the motion for a new trial, imposed the upper term of 11 years, and awarded 379 actual and 57 conduct days credit.[2]

Weiss filed a timely notice of appeal.

## II

## ANALYSIS

There is no question both Weiss and Rector were involved in the incident in which Judith was killed. Testimony by Weiss, Rector, and Velasquez all agreed on their involvement in the fight and that Judith died while it was happening. And Rector pled guilty to voluntary manslaughter. The question Weiss raises is whether the evidence was

---

[2] The court also imposed a restitution fine of $5,000, a stayed parole revocation fine in the same amount, plus other fees and assessments. These fines and assessments are not at issue on appeal.

9

sufficient to support his conviction for voluntary manslaughter, particularly where key evidence came from a person who pled guilty to the same charge.

A. *Sufficient Evidence of Voluntary Manslaughter*

Weiss argues insufficient evidence supported his conviction for voluntary manslaughter. He argues there was no evidence to support finding he acted with the intent to kill Judith and insufficient evidence to show he acted in conscious disregard for her life. He also argues the concept of heat of passion killing doesn't apply because there was no "sudden quarrel" between Weiss and victim; it was Rector and Judith who were quarrelling.

Murder is "the unlawful killing of a human being . . . with malice aforethought." (Pen. Code, § 187, subd. (a), unlabeled statutory citations refer to this code.) Voluntary manslaughter is a lesser included offense of murder, which occurs when a defendant commits a killing with intent or with conscious disregard for life but lacks malice because they acted out of unreasonable self-defense or in the heat of passion or during a sudden quarrel. (*People v. Lasko* (2000) 23 Cal.4th 101,108; see also § 192, subd. (a).)

A defendant kills in the heat of passion when "the killer's reason was actually obscured as the result of a strong passion aroused by a provocation sufficient to cause an ordinary [person] of average disposition . . . to act rashly or without due deliberation and reflection, and from this passion rather than from judgment." (*People v. Carasi* (2008) 44 Cal.4th 1263, 1306 [cleaned up].) No specific type of provocation is required, and "the

passion aroused need not be anger or rage, but can be any violent, intense, high-wrought or enthusiastic emotion." (*People v. Breverman* (1998) 19 Cal.4th 142, 163 [cleaned up].)

We review a jury verdict finding a defendant did not commit murder but did commit voluntary manslaughter by taking "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Wolfe* (2018) 20 CalApp.5th 673, 681.) We don't reweigh the evidence, resolve conflicts, or make different credibility determinations. (*In re M.H.* (2016) 1 Cal.App.5th 699, 706.) We accept all logical inferences the jury might have drawn from the evidence. (*People v. Panah* (2005) 35 Cal.4th 395, 487-488.)

We conclude the evidence in this case was more than sufficient for a reasonable jury to find Weiss killed Judith acting in the heat of passion caused by the sudden quarrel. Weiss's own statements provided ample support for the jury's verdict. Rector was providing him a place to live during hard times, and he testified she expected him to help keep order in her house because she wasn't asking him to pay rent. When Judith provoked a fight with Rector, he said he intervened to aid her. When he intervened, Judith was punching and scratching Rector's face, pulling her hair, and gouging Rector's eyes with her thumbs. Weiss admitted he used force to pull Judith away and hold her down. When she was on the ground, he put his forearm across her torso and pinned her. Weiss told a detective his arm "was close to her neck. And he had his other arm, trying to

11

keep [Rector] away." He told the detective "as he was pushing down his forearm, he may have prevented her from breathing as [his arm] was across her neck." Weiss also testified that Judith went limp and stopped breathing while he had her pinned.

Weiss argues this evidence isn't sufficient to establish that he acted with conscious disregard for Judith's life. He argues that the prosecution was required to prove that he knew his conduct was life-endangering and failed to do so. "If Weiss had actively strangled [Judith], or had savagely beaten her, or had used a weapon, or had kicked her in the head, or was legitimately proven to have covered her mouth and/or nose while holding her down, that would suffice." Anything less, he argues, prevents a jury from finding an accused acted with conscious disregard. We think this suggestion invades the province of the jury, which in this case was to listen to the evidence and decide whether Weiss could be charged with knowing he was putting Judith's life at risk by pinning her to the ground with a hand, as he described it to police, "across her neck." While Weiss is correct that a jury could reasonably have found Weiss did not act with conscious disregard for Judith's life, it's equally true that the jury could reasonably find he did so act. It's not our job to insert our own conclusions for the jury's, but only to determine whether their findings are supported. We conclude they are in this case.

There was also evidence from which the jury could have determined Weiss acted with intent. In addition to the fact that he had an incentive to aid Rector—his benefactor—there was also evidence Weiss harbored animosity toward Judith. He told police Judith had been stealing from Rector, and she had used other people's personal

12

information to open cable accounts. He said he had loaned his iPad to Judith, and she hadn't returned it. It is an odd fact of the case that, in the middle of the fight, Weiss took Judith's car keys and called Velasquez out of their room and directed her to go out to the car to retrieve his iPad. Both Velasquez and Rector said Weiss took Judith's keys from her jacket pocket while he was restraining her and handed them to Velasquez. Weiss said he didn't retrieve the keys and give them to Velasquez until Judith had died, but the jury could reasonably have accepted the testimony of the other two witnesses. Finally, the jury could reasonably have concluded Weiss's attempt to cover up the killing showed he knew it wasn't an accident.

Weiss also argues the jury's verdict isn't supported under a "sudden quarrel" theory at all "because the quarrel in this case was between Rector and [Judith], not between Weiss and [Judith]." Weiss says he "has been unable to find a single voluntary manslaughter case based on the concept of a sudden quarrel where the killer was not involved in the quarrel." The argument misconstrues the facts. Though the quarrel in question started between Rector and Judith, and Judith appeared to be the one who provoked it, Weiss quickly got drawn into the fight and therefore was very much involved. Weiss presents no authority for the proposition that someone who intervenes in a fight between two others can't be found guilty of voluntary manslaughter for killing one of the other participants. Nor has he presented any authority for the proposition that witnessing a fight can't itself be a provocation. We think the jury could reasonably have

13

concluded Weiss was provoked by the fight and, in particular, by the fact that Judith was on top of Rector and gouging at her eyes.

B. *Testimony of Weiss's Accomplice*

Weiss argues reversal is required for lack of sufficient evidence corroborating the testimony of Rector, his accomplice, in violation of the accomplice testimony statute – Penal Code section 1111.

Section 1111 says a person cannot be convicted based on "the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (§ 1111.) The statute defines an accomplice as "one who is liable to prosecution for the identical offense charged against the defendant on trial." (*Ibid.*) There's no question Rector was an accomplice under this definition, since she pled guilty to voluntary manslaughter for the killing of Judith and agreed to testify at Weiss's trial. This circumstance plainly implicates the rule of section 1111.

"[T]he reliability questions posed by accomplice testimony" renders it "by itself . . . insufficient as a matter of law to support a conviction." (*People v. Rodriguez* (2018) 4 Cal.5th 1123, 1128 [cleaned up].) "The requirement that accomplice testimony be corroborated is an exception[ ] to the substantial evidence rule." (*People v. Romero and Self* (2015) 62 Cal.4th 1, 32.) Section 1111 doesn't affect the admissibility of accomplice

14

testimony but instead "reflects a legislative determination of how accomplice testimony must be treated." (*Romero*, at p. 32 [cleaned up].)

The California Supreme Court has "interpreted section 1111 to require evidence tending to connect defendant with the crimes without aid or assistance from the testimony of the accomplice." (*People v. Perez* (2018) 4 Cal.5th 421, 452 [cleaned up].) The evidence "need not independently establish the identity of the victim's assailant, nor corroborate every fact to which the accomplice testifies, and may be circumstantial or slight and entitled to little consideration when standing alone. But the evidence must nonetheless connect the *defendant to the crime* itself, rather than simply connect the accomplice to the crime." (*Id*. at p. 452 [cleaned up] italics added.) So, in *Perez* the Court held witness testimony placing defendant near the crime scene and describing his efforts to sell stolen jewelry as well as evidence that the victim's vehicle was abandoned near the motel where Perez and his accomplices went after the killing was sufficient to corroborate an accomplice's testimony identifying Perez as the killer. (*Id.* at pp. 430, 453.)

Weiss's complaint about Rector's testimony focuses on her statement that he placed his hand over Judith's mouth. She said Weiss used his right forearm to push down on Judith's upper torso and used his left hand to cover her mouth. According to a detective, Rector reported the same thing in an interview after law enforcement found the body. Weiss denied placing his hand over Judith's mouth but admitted pinning her with his arm across her chest or neck. No one else testified that Weiss placed his hand over

15

Judith's mouth. In Weiss's view, this bit of uncorroborated testimony is critical because he believes it was necessary to establish he acted with intent to kill or with conscious disregard for the victim's life. As we discussed in Part II.A., we disagree with that characterization of the evidence. As Weiss points out effectively in his reply brief, Rector testified Weiss put his hand over Judith's mouth, not her *nose and mouth*, and "[c]overing the mouth of a person trying to scream would be effective in stopping screaming but would not keep a person from breathing." Thus, the critical evidence was Weiss's own—that he pinned Judith with his arm across her neck, not that he placed his other hand over her mouth.

As important, the evidence to corroborate Rector's testimony need only connect Weiss with the crime, and the record overflows with such evidence. (*People v. Perez*, *supra*, 4 Cal.5th at pp. 452-453.) As in *Perez*, other witnesses, including Weiss, placed him at scene of the crime. In fact, the other evidence placed Weiss at the center of the fight and on top of the victim with his arm across her neck or upper torso when she stopped breathing. This evidence adequately ties Weiss to the crime itself and therefore corroborates Rector's testimony. Even if the detail Rector added—that Weiss covered the victim's mouth with his hand—were in fact critical, the other evidence sufficiently corroborated Rector's testimony, allowing the jury to rely on it as a basis for the conviction.

C. *Sufficient Evidence Established Appellant Proximately Caused the Death*

Weiss also argues there was insufficient evidence to support his conviction for voluntary manslaughter because there was insufficient proof he proximately caused the victim's death. He bases his argument on the fact that the forensic pathologist could not determine an exact cause of death and the fact there were other potential causes of death, such as the presence of amphetamine and methamphetamine in Judith's body.

While it's true the pathologist said he couldn't determine a cause of death because the body had severely decomposed, it's not true that his testimony didn't provide any support for the jury's finding of causation. The question the jury faced was whether Weiss committed "an act that set[] in motion a chain of events that produce[d] as a direct, natural and probable consequence of the act, the death of a human being, and without which the death would not occur." (*People v. Sanchez* (2001) 26 Cal.4th 834, 845 (*Sanchez*).) "[T]here may be multiple proximate causes of a homicide, even where there is only one known actual or direct cause of death." (*Id.* at p. 846.) Where there are multiple possible proximate causes, the jury must decide whether the "defendant's conduct was a substantial concurrent cause of [the victim's] death." (*Id.* at p. 845.)

Here, according to the pathologist, the victim's decomposed remains didn't allow for him to decide on the exact cause of death. When found, the body didn't have eyes or organs inside the abdomen and pelvis, and only clumps of tissue remained inside the brain and the chest cavities. However, the pathologist was able to glean some information from the remains. He noted Judith's clothing wasn't torn and didn't have blood stains,

17

and he saw no signs of fractures to the facial bones or the ribs. He also found trace amounts of amphetamine and methamphetamine in tissue retrieved from the chest cavity, though he said he couldn't tell how recently she had taken the drugs.

Not every homicide case involves a conclusive autopsy, and the testimony of a pathologist identifying the proximate cause of death is not required to underwrite a jury's findings. In this case, multiple witnesses described how Judith's death occurred. There is no real question that Weiss had Judith pinned to the ground with his arm across her chest or neck. Weiss admitted as much. He also admitted Judith stopped breathing while he had her pinned and that she never regained consciousness. The pathologist was able to explain that their testimony was consistent with the conclusion that Weiss killed Judith by asphyxiating her. Though he didn't see hemorrhaging around the throat which could indicate strangulation, he said asphyxiation could have been the cause of death because there are ways of causing asphyxiation which leave no signs on the body. He explained applying pressure to the upper chest can cause a person to lose oxygen to the brain and lose conscious within 10 to 15 seconds and that death may result within minutes, depending on the person's age, build, and athleticism. His testimony therefore supported the jury's finding that Weiss proximately caused Judith's death.

Nor does the pathologist's finding that Judith had amphetamines and methamphetamines in her system undermine the jury's verdict. "[I]t has long been recognized that there may be multiple proximate causes of a homicide, even where there is only one known actual or direct cause of death. (*Sanchez*, *supra*, 26 Cal.4th at p. 846.)

The evidence from both the percipient witnesses and the pathologist, "with all reasonable inferences drawn in favor of the guilty verdict[], supports a finding that defendant's commission of life-threatening deadly acts . . . was a substantial concurrent, and hence proximate, cause of [Judith's] death." (*Id.* at pp. 848-849.)

Whether Weiss's "conduct was a proximate, rather than remote, cause of death is ordinarily a factual question for the jury unless undisputed evidence . . . reveal[s] a cause so remote that . . . no rational trier of fact could find the needed nexus. A jury's finding of proximate causation will be not disturbed on appeal if there is evidence from which it may be reasonably inferred that the defendant's act was a substantial factor in producing the death." (*People v. Butler* (2010) 187 Cal.App.4th 998, 1010 [cleaned up].) We conclude in this case that the jury acted reasonably in finding Weiss proximately caused Judith's death.

## III

## DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
J.

We concur:

CODRINGTON _____
Acting P. J.

FIELDS _____
J.