Filed 2/21/25  P. v. Saez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,　　Plaintiff and Respondent,　　v.　ALFREDO SAEZ,　　Defendant and Appellant. | D084813　　　(Super. Ct. No. FWV030830) |

APPEAL from an order of the Superior Court of San Bernardino County, Daniel Detienne, Judge.  Reversed and remanded with directions.

Michaela Dalton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

Alfredo Saez appeals from an order of the trial court denying his petition for resentencing under Penal Code[1] section 1170.95 (now section

---

1　　Further unspecified statutory references are to the Penal Code.

1172.6).[2]  Saez was charged with murder and, in 2006, he pled guilty to voluntary manslaughter and admitted allegations that he personally used a firearm and personally inflicted great bodily injury.  Saez contends the trial court erred by denying his petition for resentencing on that conviction at the prima facie stage in 2023, because the court improperly relied on the preliminary hearing transcript and mistakenly believed that its finding that he was the actual killer precluded resentencing under section 1172.6.  On our own independent review, we conclude the record of conviction does not conclusively establish that Saez is ineligible for relief under section 1172.6 as a matter of law.  Accordingly, we reverse the trial court's order and remand with directions to the court to issue an order to show cause.

## FACTUAL AND PROCEDURAL BACKGROUND

The People charged Saez with one count of murder with malice aforethought in the killing of his girlfriend, Rhonda McNamara, in April 2004.  The trial court held a preliminary hearing and, after hearing from several witnesses, concluded there was sufficient evidence to hold Saez to answer on the charge of murder.

In April 2006, Saez pled guilty to the lesser and necessarily included offense of voluntary manslaughter in violation of section 192, subdivision (a).  He also admitted that he inflicted great bodily injury under circumstances involving domestic violence as described in section 12022.7, subdivision (e), and that he personally used a firearm in the commission of the crime as described in section 12022.5, subdivision (a).  The court noted that the

---

[2]  Effective June 30, 2022, section 1170.95 was recodified without substantive change in section 1172.6, pursuant to Assembly Bill No. 200 (2021–2022 Reg. Sess.).  (See Stats. 2022, ch. 58, § 10.)  We refer to the current codification throughout this opinion.

2

preliminary hearing "support[ed] a factual basis for taking of the plea and for the admissions," and counsel "[s]o stipulated as to Count 1 [the voluntary manslaughter plea] and *People v. West*[3] as to the two admissions." As set forth in the plea agreement, the trial court sentenced Saez to 26 years in prison, comprised of 11 years for the manslaughter conviction, plus an additional 5 years for the great bodily injury enhancement, and 10 years for the firearm enhancement.

In October 2022, Saez filed a petition for resentencing under now current section 1172.6. He declared, per the standard form petition, that the information filed against him "allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime," and that he "accepted a plea offer in lieu of a trial at which [he] could have been convicted of murder," and that he "could not presently be convicted of murder or attempted murder because of the changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

The trial court appointed counsel for Saez and permitted briefing on the petition. Saez did not directly dispute that he was the actual killer, but instead asserted "that he lacked the requisite intent or did not act in a manner that would make him liable under still-valid murder theories."

The People submitted the felony complaint, the preliminary hearing transcript, the felony information, the change of plea form, and the transcript from the change of plea hearing in opposition to the petition. They asserted each of these documents were part of the "record of conviction" the trial court

---

3       *People v. West* (1970) 3 Cal.3d 595 (*West*).)

3

could review at the prima facie stage, but conceded the court should not engage in factfinding, such as weighing evidence or making credibility findings as to unresolved factual issues.

Accordingly, the People presented facts "from the preliminary hearing transcript which was the stipulated factual basis for the plea of voluntary manslaughter." McNamara's daughters testified about statements Saez allegedly made informing them that McNamara was dead and stating that he did not need the police, that he "just did what she asked," and that he "tried to carry her down so [he] could burn her like she wanted." One of the daughters directed police to Saez's brother's house. Saez ran when he saw the police and they found him hiding under some bushes. A forensic pathologist conducted an autopsy on the body and opined that the cause of death was homicidal asphyxia and the mechanisms were a combination of suffocation and strangulation. The People asserted the foregoing evidence from the preliminary hearing and the admissions in the change of plea form demonstrated Saez was the actual killer and, therefore, Saez had not made the requisite prima facie showing under section 1172.6.

At the hearing on the petition, Saez's counsel objected to the use of the preliminary hearing transcript at the prima facie stage. He argued the parties stipulated to the transcript as demonstrating a factual basis for the plea, but not to the truth of every statement therein. The People responded that it was appropriate for the court to consider the preliminary transcript to the extent it set forth the factual basis for the plea of voluntary manslaughter, and to the extent it demonstrated Saez was the sole person charged in the murder and "there was no felony murder theory" or "natural and probable consequences theory involved." Defense counsel argued further that there was no mention of a firearm in the preliminary transcript and

4

asserted that allegation "was basically a legal fiction to get at a number," and "certainly should not be used to foreclose [Saez's] petition."

The trial court relied on *People v. Davenport* (2021) 71 Cal.App.5th 476, to conclude that the preliminary hearing transcript could be part of the record of conviction if stipulated to by the defendant. The court noted further that it could not consider any hearsay in the preliminary hearing transcript but that, here, all of the witnesses testified to their own direct knowledge. The court went on to discuss several statements from witnesses at the preliminary hearing, before concluding: "Looking at that record of conviction, it shows that the defendant was the actual killer, there was no felony murder, no natural and probable consequences theory. To put it another way, [Senate Bill No.] 1437 changed the law related to accomplice liability. And there's no, in the record of conviction, no accomplice liability at all here."

Based on those findings, the trial court summarily denied the petition for resentencing.

Saez filed a timely notice of appeal.

## DISCUSSION

### A.    *Brief Summary of Section 1172.6*

Effective January 1, 2019, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.), which narrowed the scope of liability for felony murder, abolished liability for murder based on the natural and probable consequences doctrine, and eliminated convictions for murder based on imputing malice predicated solely on a person's participation in a crime. (See § 1172.6; *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) Senate Bill 1437 did this by amending section 188, which defines malice, and section 189, which defines the degrees of murder. (Stats. 2018, ch. 1015, §§ 2 & 3.)

Amended section 188 states:   "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought.    Malice shall not be imputed to a person based solely on his or her participation in a crime."   (§ 188, subd. (a)(3).)

Amended section 189 states:   "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:   [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.   [¶]  [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."    (§ 189, subd. (e).)

Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' "  (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)  "In its current form, section 1172.6 applies to those who pled guilty to manslaughter after being charged with murder and who would have been subject to prosecution for murder under a felony murder theory, the natural and probable consequences doctrine, or any other theory of imputed malice. (§ 1172.6, subd. (a).)"  (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211 (*Gaillard*).)

Senate Bill 1437 also established resentencing relief for eligible defendants.   (§ 1172.6, subd. (a); *People v. Strong* (2022) 13 Cal.5th 698, 707–

6

708.)   Under current subdivision (a), "[a] person convicted of felony murder or murder under a natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition" with the sentencing court to have his or her "murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.  [¶]  (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶]  (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019" under Senate Bill 1437.

"Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1172.6, subd. (b)(3).)  After the parties have had an opportunity to submit briefing, with the aid of counsel, the trial court must evaluate the petition to determine whether the petitioner has made a prima facie case for relief, and if so, to issue an order to show cause.  (§ 1172.6, subd. (c).)

"[T]he parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief." (*Lewis*, *supra*, 11 Cal.5th at p. 972.) However, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]. [T]he 'prima facie bar was intentionally and correctly set very low.' " (*Ibid.*) At the prima facie stage, the trial court "must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 . . .unless the record conclusively establishes every element of the offense." (*People v. Curiel* (2023) 15 Cal.5th 433, 463 (*Curiel*).)

The court may appropriately deny a petition at the prima facie stage only if the petitioner is ineligible for relief *as a matter of law*. (See *Curiel, supra,* 15 Cal.5th at p. 450 [the court may dismiss the petition at the prima facie stage, " '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition' "].) If, on the other hand, petitioner has made a "prima facie showing of entitlement to relief" (*ibid.*), "the court shall issue an order to show cause." (§ 1172.6, subd. (c).)

We review the trial court's decision to deny a section 1172.6 petition at the prima facie stage de novo. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; *People v. Coley* (2022) 77 Cal.App.5th 539, 545.) We affirm if the judgment is correct, regardless of the trial court's reasoning. (*People v. Eynon* (2021) 68 Cal.App.5th 967, 976 (*Eynon*) ["even if the reason given by the trial court was erroneous," the judgment will be affirmed on appeal if the denial of the petition at the prima facie stage was correct]; *People v. Smithey* (1999) 20 Cal.4th 936, 972 [if the court's decision was correct under any legal

8

theory, " ' " 'it must be sustained regardless of the considerations which may have moved the trial court to its conclusion' " ' "].)

## B.    *Analysis*

Saez asserts the trial court erred by relying on the preliminary hearing transcript to conclude he was the actual killer, because doing so necessarily required impermissible factfinding at the prima facie stage, and by concluding that he was ineligible for resentencing under section 1172.6 if he was the actual killer.

To determine whether Saez established a prima facie case for relief under section 1172.6, we examine his record of conviction,[4] and consider whether it conclusively demonstrates that he could be convicted of murder or attempted murder under the amended murder statutes.  (*People v. Flores* (2022) 76 Cal.App.5th 974, 987 (*Flores*).)  It is well established that the charging document, the plea form, and plea colloquy are part of the record of conviction.  (See, e.g., *People v. Verdugo* (2020) 44 Cal.App.5th 320, 329–330; *People v. Saavedra* (2023) 96 Cal.App.5th 444, 448.)

The charging documents allege that Saez unlawfully murdered McNamara, with malice aforethought, in violation of section 187, subdivision (a).  They do not reference any other defendant or any other related felony, but they are nevertheless insufficient on their own to foreclose a theory of either felony murder or natural and probable consequences murder.  (*People v. Estrada* (2024) 101 Cal.App.5th 328, 338 (*Estrada*).)  " '[I]t has long been the law in this state that an accusatory pleading charging murder need not specify degree or the manner in which the murder was committed.' " (*Ibid.*)

---

[4]    Pursuant to *People v. Reed* (1996) 13 Cal.4th 217, 223, the record of conviction consists of "those record documents reliably reflecting the facts of the offense for which the defendant was convicted."

"Nor does an accusatory pleading need to 'specify the theory of murder on which the prosecution relies at trial.'" (*Ibid*.) Further, the charging document does not exclude the possibility that other people participated in the killing but were not named in the charges. (*Estrada,* at p. 339 [prosecutors are not required to try all codefendants together, "so this single charging document does not foreclose the possibility of other people having been charged for related crimes].") Accordingly, the charging documents do not render Saez ineligible for relief under section 1172.6.

We turn next to Saez's plea form and the associated colloquy. Saez pled guilty to voluntary manslaughter. Manslaughter is "the unlawful killing of a human being without malice." (Pen. Code, § 192.) A defendant lacks malice and is guilty of voluntary manslaughter when they kill another, acting with either the intent to kill or a conscious disregard for life, but in a sudden quarrel or heat of passion, or unreasonable self-defense. (*People v. Blakeley* (2000) 23 Cal.4th 82, 89–91; *People v. Lasko* (2000) 23 Cal.4th 101, 109–110.) By entering a plea of guilty to voluntary manslaughter, Saez admitted all the elements of voluntary manslaughter, but not to any particular theory. (See *People v. Cisneros-Ramirez* (2018) 29 Cal.App.5th 393, 405 [guilty plea is an admission of all elements essential to a conviction]; *Eynon, supra,* 68 Cal.App.5th at pp. 977–978 ["By pleading guilty, the defendant admitted every element of the charged offense. But the defendant did not admit facts supporting liability on any particular theory"].) Voluntary manslaughter, by definition, does not require malice, and the plea does not preclude the possibility that Saez could have been convicted under a felony murder or other natural and probable consequences theory. (See *Gaillard, supra,* 99 Cal.App.5th at p. 1212 [generic plea of voluntary manslaughter following murder charge does not preclude a natural and probable consequences

10

theory].)  Thus, Saez's plea of guilty to voluntary manslaughter also does not render him ineligible for relief under section 1172.6.

As part of the plea, Saez also admitted that he personally used a firearm and personally inflicted great bodily injury on the victim under circumstances involving domestic violence in the commission of the felony, voluntary manslaughter.  Although Saez affirmatively admitted both allegations on the record, his counsel clarified that he entered the admissions pursuant to *West, supra,* 3 Cal.3d 595, i.e., without admitting the factual truth of the allegations.  Accordingly, Saez now asserts that the admissions do not constitute factual admissions that this court can consider at the prima facie stage of a section 1172.6 analysis.  (See, e.g., *People v. Alazar* (2024) 105 Cal.App.5th 1100, 1111 ["A *West* plea does not admit a factual basis for the plea"], review granted Dec. 31, 2024, S287917.)

As to the firearm enhancement, we note there is no other mention of a firearm anywhere in the record, including in the preliminary hearing testimony.  Saez's counsel asserted it "was basically a legal fiction to get at a number."  The People do not contend otherwise.  Regardless, neither admission (to the use of a firearm or inflicting great bodily injury) precludes relief.  Neither constitutes an admission of malice, neither is inconsistent with the voluntary manslaughter plea, and Saez did not admit any additional facts in association with either.  (See, e.g., *Gaillard, supra,* 99 Cal.App.5th at pp. 1209, 1213 [plea to voluntary manslaughter with admissions of personal use of a deadly weapon and infliction of great bodily injury did not conclusively establish ineligibility for resentencing at the prima facie stage]; *Estrada, supra,* 101 Cal.App.5th at p. 338 [bare admissions of personal use of a deadly weapon and infliction of great bodily injury do not preclude a theory of imputed malice].)

This leaves us with the preliminary hearing transcript.  As the parties acknowledge, there is currently a split of authority on "the import of the preliminary hearing transcript in determining whether a petitioner has made a prima facie case for resentencing," where the transcript is used as the factual basis for the plea.  (See *Flores, supra,* 76 Cal.App.5th at p. 989.)  The issue is pending review by the California Supreme Court.  (See *People v. Patton* (2023) 89 Cal.App.5th 649 (*Patton*) [whether a trial court impermissibly engages in factfinding by relying on the preliminary transcript to summarily deny a section 1172.6 petition], review granted June 28, 2023, S279670; *People v. Pickett* (2023) 93 Cal.App.5th 982 (*Pickett*) ["deferred pending consideration and disposition of a related issue in *Patton*"], review granted Oct. 11, 2023, S281643; *People v. Mares* (2024) 99 Cal.App.5th 1158 (*Mares*) ["deferred pending consideration and disposition of a related issue in *Patton*"], review granted May 1, 2024, S284232; see also *Flores,* at pp. 987–992 [preliminary hearing transcript used as the factual basis for the murder plea, but because defendant never admitted the truth of the testimony, it was not part of his record of conviction].)

Here, the trial court relied on the preliminary hearing transcript to conclude that Saez "was the actual killer, [and that] there was no felony murder, no natural and probable consequences theory."  Saez asserts this was error, that the trial court engaged in impermissible factfinding at the prima facie stage, and that stipulating to the preliminary hearing transcript as the factual basis of the plea does not equate to an admission as to the truth of every statement made at the hearing.

Section 1192.5, subdivision (c) requires that a trial court taking a plea "cause an inquiry to be made of the defendant to satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea."

The trial court may examine the defendant regarding the factual basis for the plea, or "counsel may stipulate to a particular document that provides an adequate factual basis, such as a complaint, police report, preliminary hearing transcript, probation report, grand jury transcript, or written plea agreement." (*People v. Holmes* (2004) 32 Cal.4th 432, 442.) In either case, "[t]he factual basis required by section 1192.5 does not require more than establishing a prima facie factual basis for the charges." (*Holmes,* at p. 441.) The court does not need to be convinced of the defendant's guilt and does not need "to interrogate the defendant about possible defenses to the charged crime." (*Ibid.*) Thus, a plea will be upheld even where the factual inquiry "left some ambiguity as to the mental state for the charged offense." (*Id.* at p. 442.) Here, even if we were to consider the preliminary hearing transcript, there is ample ambiguity regarding the precise details of Saez's involvement in McNamara's death, his associated mental state, and whether anyone else was involved in the killing.

The People assert the preliminary hearing transcript conclusively establishes Saez "admitted to the victim's daughters that he personally and purposefully killed [McNamara]." We disagree. One of McNamara's daughters testified that Saez told her over the phone that her mother, McNamara, was dead. She asked what Saez did to her, and Saez responded, " 'No, no. You know, your mom, she was into some witchcraft,' or something like that." Another of McNamara's daughter called Saez soon thereafter. Almost immediately upon answering, Saez said, "I don't need the police. I just did what she asked." When the daughter asked Saez what happened, Saez said, "Your mom has all these books about prophets and spirituality." Saez also mentioned some letters and stated, "I tried to carry her down so I could burn her like she wanted."

In our view, Saez's alleged statements as testified to in his preliminary hearing do not conclusively establish that he could be convicted under a currently valid theory of murder. Rather, they were ambiguous as to his exact involvement, whether third persons may have been involved in the killing, and his mental state at the time of McNamara's death. They do not, as the People assert, amount to an admission that Saez personally or purposefully killed McNamara with malice, and they do not preclude the possibility that someone else was involved. Indeed, at the conclusion of the preliminary hearing, defense counsel asserted there was no evidence that Saez was directly involved in McNamara's death, and that the alleged statements to McNamara's daughters did not prove that he did anything. The trial court agreed that Saez did not make a direct "as in he said he did it . . . confession," but found sufficient circumstantial evidence to hold him over.

Further, neither the description of McNamara's injuries nor the pathologist's stated opinion that her death was caused by homicidal asphyxia shed any light as to the precise nature of Saez's or anyone else's involvement in the death. Likewise, while running from the police is often considered evidence of consciousness of guilt, the fact that Saez did so does not conclusively establish that he was the actual killer of McNamara or that he acted with malice. Accordingly, we cannot agree with the trial court's conclusion that the preliminary hearing transcript—if it can be considered as part of the record of conviction in the first instance—establishes that Saez was the actual killer, or that it precludes a theory of felony murder.

This case is unlike those pending review with respect to the import of the preliminary hearing transcript. In *Patton*, the preliminary hearing transcript established video footage of Patton shooting the victim. (*Patton,*

14

*supra,* 89 Cal.App.5th at p. 652, rev. granted.)  In *Pickett*, two witnesses saw Pickett fire a shot into the air near the victim, and then heard one or two more shots as they ran away.  (*Pickett, supra,* 93 Cal.App.5th at p. 986, rev. granted.)  Finally, in *Mares*, one witnesses heard Mares fighting with the victim and another saw Mares stab the victim "three or four times in the face and abdomen."  (*Mares, supra,* 99 Cal.App.5th at p. 1162, rev. granted.)  By contrast here, there were no direct witnesses, no direct evidence establishing Saez was the sole actor, and nothing to establish his mental state.

Thus, we need not determine whether the preliminary hearing transcript is appropriately considered as part of the record of conviction. Regardless of whether we include the preliminary hearing transcript, the record of conviction is not sufficient to refute the allegations in the petition as a matter of law.

Because we find that the preliminary hearing transcript was not sufficient, even if considered, to establish that Saez was the actual killer, or that he acted with the requisite intent, we need not address Saez's additional argument that he is eligible for relief based on a second-degree felony murder theory even if the record of conviction conclusively establishes that he was the actual killer.

15

## DISPOSITION

The order denying Saez's section 1172.6 petition is reversed.  The trial court is directed to issue an order to show cause and conduct the proceedings required by section 1172.6, subdivision (d).


                                                                    KELETY, J.

WE CONCUR:


McCONNELL, P. J.


CASTILLO, J.

16